## WEIDMAN SILK DYEING COMPANY v. CITY OF NEWARK.

Argued February 26, 1912—Decided June 14, 1912.

1. In a suit for damages caused by a wrongful diversion of water from a river, the defendant is not chargeable with the total cost of a permanent improvement to the plaintiff's property made for the purpose of securing a supply of water from another source, where the plaintiff still retains the use of the improvement. The true rule is to allow for the value of its use to the time of beginning suit, which may properly include an allowance for the loss due to wear and tear and depreciation.

2. The plaintiff in an action for wrongful diversion of water, where he has been compelled to procure a new supply, which is delivered by gravity, must in his claim for damages deduct the cost of pumping the former supply from the cost of the new supply.

3. Where water is wrongfully diverted from a river by several corporations, the true basis for apportioning the loss of the plaintiff in an action for the diversion is the proportion of the current flow diverted by each in times of low water when the plaintiff could not obtain its former supply.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and SWAYZE.

For the plaintiff, *John W. Griggs.*

For the defendant, *Herbert Boggs* (*Michael Dunn* on the brief).

The opinion of the court was delivered by

SWAYZE, J. The action is for damages caused by a diversion of water of the Passaic river. The claim is for the cost of securing the necessary water elsewhere. Included in that cost are charges for standpipe, filters and extra pipe, which may have been reasonably necessary in order to secure the new supply of water. Damages are claimed for the six years prior to the suit. The charge permitted an allowance of the entire cost of these improvements, although in fact they were an addition to, and improvement of, the plaintiff's plant. The only theory upon which the defendant could be charged with this expense was that it was a reasonable expense in order to avoid greater damages to the plaintiff's business. Allowance for such expense must be limited to what is reasonable. Obviously it was not reasonable to charge the defendant with the cost of an addition to, or improvement of, the plaintiff's plant. It is almost as obvious that it is not reasonable to charge the defendant in a suit for damages caused by a wrongful diversion up to a certain time with the total cost of a permanent improvement, the use of which the plaintiff still retains. If the wrongful diversion should cease, the plaintiff has improved his plant at defendant's expense. The true rule is to allow for the value of the use of the permanent improvement up to the time of beginning the suit. This may properly include an allowance for the loss due to wear and tear and depreciation. The value of the subsequent use and later depreciation may be included in a suit for the subsequent damage for the di-

version. Since the jury were permitted to award larger damages, their verdict must be presumed to include this excessive allowance.

The plaintiff was entitled to the extra cost of the new supply of water. This supply was delivered by gravity; formerly the plaintiff had been obliged to pump out of the river. The judge should have instructed the jury that the cost of pumping must be deducted from the amount paid for the new supply; that cost the plaintiff saved.

The defendant was not the only diverter. Other municipalities and the East Jersey Water Company had diverted water. The judge correctly charged the rule of *Jenkins* v. *Pennsylvania Railroad,* 38 *Vroom* 331, that it was for the good sense of the jury, as reasonable men, to form, from the evidence, the best estimate that can be made under the circumstances as a basis of compensatory damages for the actual injury. He, however, permitted them to adopt the theory of the plaintiff that the total damages might be apportioned among the diverters in proportion to the amount of water each consumed. The result was to charge the city of Newark with about one-third of the damage. Newark diverted only the waters of the Pequannock with a drainage area of sixty-two and one-half square miles, while the whole drainage area of the Passaic back of the Great falls at Paterson and above the plaintiff's land was eight hundred square miles. The city of Newark accumulated in its reservoirs water in times of flood or high water in order to be able to supply its needs in time of low water. At the latter times the natural flow of the Pequannock watershed was insufficient to supply the city's needs. Obviously, then, at such times, the amount of the city's consumption was no measure of the extent of its diversion. The impounding of water in the city's reservoirs in time of flood, or high water, was no injury to the plaintiff. At such times the supply in the river was adequate for them, and it might even be to their advantage to have the water impounded in time of flood. The injury to them came only in time of low water when it was impossible to pump the necessary supply from the river.

The true basis for apportioning the loss among the diverters was the proportion of the current flow diverted by each in times of low water when the plaintiff could not obtain its supply by pumping. This, of course, affects only the question of apportionment and not the total of the plaintiff's loss; since they had to make a contract for a continuous supply even though they needed it only during low water, they are entitled to be repaid what it cost.

It is to be noted also that it is uncontradicted that beginning with 1907 the city of Newark restored to the Pequannock, in times of low water, a quantity said to equal its normal flow at such times; that is, the city so far from diverting water to the injury of the plaintiff, conserved it by its reservoirs and maintained the natural flow.

The verdict was excessive because permitted to be figured on erroneous principles. The rule must be made absolute.