# THE BANK OF BISHOP & COMPANY, LIMITED, A CORPORATION, *v.* THE HAWAII SOAP COMPANY, LIMITED, AND K. AKIRA.

## No. 1465.

EXCEPTIONS FROM CIRCUIT COURT FOURTH CIRCUIT.
HON. H. L. ROSS, JUDGE.

ARGUED JUNE 27, 1923.                    DECIDED OCTOBER 5, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

COMMERCIAL PAPER—*evidence—prima facie showing of due execution of note.*

In an action upon a promissory note against a corporation as maker, there was no direct testimony that the person who purported to sign the note as treasurer of the corporation on its behalf was in fact its duly elected treasurer or that as treasurer he had been authorized to sign the note. But there was evidence that the corporation had overdrawn its account with the plaintiff, a banking corporation; that the note sued on was given by the defendant and accepted by the plaintiff to offset the overdraft and that the amount of the note was credited by the plaintiff to the defendant's overdrawn account. Held, that this evidence, wholly uncontradicted, was a sufficient *prima facie* showing that the person who purported to sign the note as treasurer was in fact the treasurer and was authorized to sign for the corporation, the maker.

SAME—*promissory note—release of endorser.*

In an action against the maker and an endorser of a promissory note, evidence offered by the endorser to prove a release of himself as endorser is admissible.

OPINION OF THE COURT BY PERRY, J.
(Peters, C. J., dissenting.)

This is an action of assumpsit upon a note for $9000. The defendants are The Hawaii Soap Company, Limited, the maker, and K. Akira, an endorser. In obedience to the direction of the presiding judge, the jury rendered a verdict in favor of the plaintiff and against both defendants for the full amount of the principal of the note and for interest. The cause comes to this court upon exceptions.

The note was signed as follows: "The Hawaii Soap Company, Limited, T. Ono, Treasurer." A witness for the plaintiff testified to the genuineness of the signature of T. Ono; but it is contended in support of the exceptions that there was no evidence tending to show that T. Ono was the treasurer of The Hawaii Soap Company, Limited, or that, as treasurer, he had been authorized to sign the note. Evidence was unnecessary, of course, to show that The Hawaii Soap Company, Limited, was a corporation. The defendant filed an answer of general denial and did not plead any lack of corporate capacity on the part of this defendant or any lack of power to be sued. "The use of the word 'limited' naturally imports a corporation and renders further proof unnecessary." *Gonsalves & Company, Limited,* v. *Watson,* 16 Haw. 256, 257. See also *Hawaii Mill Company, Limited,* v. *Andrade,* 14 Haw. 500. The note teller of the bank testified that the note sued on had been delivered to him by "the makers,—by Mr. Akira acting for The Hawaii Soap Company" and that at the time of the delivery of the note the $9000 therein referred to was by the plaintiff "deposited to the credit of The Hawaii Soap Company, Limited"; that the note was made and dated on June 10, 1921; and that on June 10, 1921, "there were other notes of the company" (the defendant corporation) "paid by check, causing an overdraft, and this note was taken to offset this overdraft." There is evidence, in other words, to the effect that the defendant

corporation delivered to the plaintiff the promissory note in question as the note of the corporation and that upon the strength of the note the corporation was given and accepted the sum of $9000, being the loan mentioned in the note.   This is a sufficient *prima facie* showing that T. Ono was in fact the treasurer of the corporation and that he was duly authorized by the corporation to sign as treasurer.   No evidence was adduced by the corporation tending to show that it did not receive the loan or that T. Ono was unauthorized to sign the note.

The defendant K. Akira offered at the trial to prove that after the delivery of the promissory note the plaintiff accepted two mortgages on certain property of the defendant corporation and that "one of the considerations for the execution of the mortgages was an extension of time for the payment of the promissory note" by the corporation for one year and that this extension of time was without the consent of the endorsers and without any reservation by the plaintiff of its right of recourse against them; and also made a separate offer to prove that subsequent to the delivery of the note, "as a consideration for the execution of these mortgages the endorsers upon the promissory note * * * were released and discharged from all further or future liability."

Whether the two mortgages, which were marked as exhibits for identification and were made a part of the record now before us, of themselves constituted an extension of time by the payee in favor of the maker need not be now determined.   It is sufficient to say that the offer as noted in the record was broader and was an offer to prove an express release and discharge of the endorsers as a consideration for the execution and delivery of the mortgages and also to prove an express agreement by the bank that the time for the payment of the note should be extended, and this without the consent of the endorsers.

The defendant K. Akira while on the witness-stand was asked by his attorney whether or not, when the two mortgages were delivered to the plaintiff, any such agreement of extension of time was made and was not permitted to answer the question. Under the Negotiable Instruments Act (R. L., Sec. 3570) an endorser is discharged "by any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." The defendant Akira was entitled to an opportunity to prove a release, either express or indirect, of himself as an endorser and therefore this evidence was erroneously excluded.

The remaining exceptions need not be considered. The verdict against the maker of the note will stand; as against the endorser the verdict is set aside and a new trial is granted.

*W. H. Smith* (also on the briefs) for plaintiff.

*F. Patterson* (also on the briefs) for defendants.

### DISSENTING OPINION OF PETERS, C. J.

I respectfully dissent from so much of the foregoing opinion as holds that the plaintiff made out a *prima facie* case of execution by the Hawaii Soap Company, Limited, of the note sued upon. The defendant filed a general denial which put in issue all the material allegations of the complaint. One of the material allegations of the plaintiff's complaint was that the defendant, Hawaii Soap Company, Limited, made, executed and delivered the note in question. There is not a scintilla of evidence going to show that T. Ono upon the date of the execution of the note or at any other time was the treasurer of the Hawaii Soap Company, Limited, or that he was expressly authorized to affix the signature of the company to the note.

This is admitted by the plaintiff.  The majority opinion apparently proceeds upon the theory that T. Ono, a stranger, was impliedly authorized by the company to affix its signature to the note by reason of acts and conduct on the part of the latter estopping it from denying its signature or by reason of the ratification of the note after its execution.

I fail to discern in the evidence any acts or conduct on the part of the Hawaii Soap Company, Limited, constituting legal estoppel.  There is no evidence that the company held out T. Ono as the treasurer of the company or that it directly or indirectly authorized the execution or delivery of the note.

The majority opinion states that the evidence is that it was delivered to the "payee by the maker by Mr. Akira acting for the Hawaii Soap Company."  It is true that Mr. Dias the teller of the payee bank testified on cross-examination that the note was delivered to him by the "makers" but immediately upon a repetition of the question he corrected his statement and said that it was delivered to the bank by Akira.  Akira was an indorser and not a maker.  The evidence of Mr. Dias is as follows: "Q  Who delivered the note to you?  A  The makers. Q  Did Muraki deliver that note to you personally? A  He did not.  It was delivered by Mr. Akira acting for the Hawaii Soap Company."  This evidence certainly does not admit of a finding that the note was delivered by the "makers" nor does it admit of a conclusion of law that Akira was the agent of the soap company acting within the scope of his authority.  If Mr. Dias' statement that Akira was "acting for the soap company" was a statement of fact it was a mere conclusion or inference arrived at by the witness from other facts and hence incompetent.  The facts themselves upon which the conclusion of the witness was predicated should have been shown.  (17 Cyc., title

"Evidence," p. 209, par. E.)   Moreover, the facts upon
which the witness came to this conclusion or inference
may have been predicated upon the facts themselves inad-
missible in evidence.   He may have come to this conclu-
sion from statements of Akira and in the absence of evi-
dence *aliunde* of an existing agency between Akira and
the Hawaii Soap Company, Limited.   Akira's declarations
of agency would have been inadmissible.   (Horwitz' Jones
on Evidence, p. 255.)   If Dias' statement was a conclu-
sion of law it obviously was incompetent.

Moreover, the conclusion of the witness Dias that
Akira, the indorser, was acting for the Hawaii Soap Com-
pany, Limited, did not result from anything that the de-
fendant company said or did or omitted to say or do.   So
far as the record discloses Akira may have been acting
for the Hawaii Soap Company, Limited, without its
knowledge or consent.   The evidence is that he was acting
for the soap company, not that he was acting for it with
its consent.   The contract of principal and agent does not
arise from the unauthorized acts of an agent.   "It is a
fundamental principle that agency can exist only by the
will of the principal, and with the consent of the agent.
It is therefore essential to the formation of the relation
that the principal shall in some manner, either expressly
or by implication from conduct for which he is respon-
sible, appoint the agent, and that the agent shall in some
way accept the appointment."   31 Cyc., title "Principal
and Agent," 1215.

This evidence of Dias is consistent with an unauthor-
ized act.

If the majority opinion is based upon the theory of
ratification, that is, the ratification of the act of the stran-
ger T. Ono in affixing the company's name or the ratifica-
tion of the indorser Akira assuming to act as its agent,
here similarly the evidence fails to support any finding to

that effect.   The majority opinion states, "There is evidence * * * to the effect that * * * the corporation was given and accepted the sum of $9000 * * *." The evidence in this regard is that of the same witness Dias who testified upon cross-examination as follows: "Q You don't know whether the Hawaii Soap Company got this $9000 or not do you?  A They did get it.  Q How do you know? A It was credited to their account.  Q Who by?  A By the bank of Bishop & Company.  Q You don't know as a matter of fact personally yourself that they got $9000 except by the books?  A I do know.  Q Do you know in any other way except by the books?  Is that the reason why you know?  A Yes."  This evidence simply amounts to the statement that $9000 was credited to the Hawaii Soap Company, Limited, on the books of the bank.  But whether the company ever enjoyed this credit or drew against it the record is absolutely silent.  There was no showing that the soap company solicited credit or that credit was extended to it by the bank at the company's instance or request.  The mere proof that the consideration of the note was placed to the company's credit at the bank is no proof that the company enjoyed that credit, much less that it received it.  All the evidence adduced by the plaintiff is consistent with the unauthorized acts of strangers without the prior or subsequent knowledge or consent of the soap company, either express or implied.

Nor is it a question of whether or not the defendant soap company introduced any evidence.  It was entitled to repose secure upon its plea of general issue and demand of the plaintiff that it prove all the necessary and material allegations of its complaint.

I fail to see wherein either upon estoppel or ratification the plaintiff showed any implied authority on the part of T. Ono to sign the name of the Hawaii Soap Company, Limited, to the note or any acts or conduct on the

part of the soap company ratifying the acts of T. Ono or Akira. Under the circumstances the plaintiff wholly failed to prove the execution of the note by the Hawaii Soap Company, Limited, and the latter's motion for nonsuit should have been granted.