DONALD A. MCDONALD, ADMR. *vs*. FRED·PRATT, JR.

Penobscot.      Opinion December 3, 1930.

*A. M. Rudman,*
*G. E. Thompson,* for plaintiff.
*Cook, Hutchinson, Pierce & Connell,*
*F. J. Doyle,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

THAXTER, J.   This is an action by an administrator to recover for conscious pain and suffering of his decedent, who died from injuries received when he was struck by the defendant's automobile. The defendant pleaded the general issue with a brief statement setting up the plaintiff's own want of due care. The case is before this court on a general motion and on exceptions.

It appears that at about seven o'clock in the evening of the nineteenth day of September, 1929, the deceased, Roderick A. MacDonald, was engaged with his son, the plaintiff, and with Roderick A. McLean in cleaning up some branches and brush from a tree which had been felled on the McLean lawn in East Millinocket. The McLean house and that of MacDonald were situated beside each other on the main highway leading from Medway to Millinocket with a narrow driveway between them. On the same side of the street for a distance of more than a quarter of a mile the houses were situated close together. On the opposite side of the road, however, there was an open meadow, and the branches and brush were being taken across the street and deposited in this vacant field. The plaintiff's father, a strong, rugged man of seventy-three years of age, had made a number of trips across the road carrying brush before the happening of the fatal accident. The width of the travelled or tarvia portion of the highway at this point was twenty-eight feet, and two feet beyond that on the farther side of the road was a ditch or gully. There was an unobstructed view on the road northerly from the plaintiff's house of three hundred and fifty to four hundred feet. The weather was clear and the road was dry. It was dusk, almost dark, so that street lights and automobile lamps were burning.  Northerly on the road toward Millinocket, about three hundred feet from the plaintiff's house, there is a street lamp, and southerly toward Medway another about one hundred and fifty feet away. The deceased, just prior to receiving his injuries, picked up an armful of brush, and, carrying it on his left arm and preceded by the young child of McLean, started across the street. Beyond the middle of the road he was struck by the car of the defendant, a Ford sedan, which the defendant was driving on his right-hand side of the road in the direction of Medway. So far the facts do not seem to be in dispute.

There were two eyewitnesses of the accident who testified for the plaintiff, Roderick McLean, the owner of the adjoining property, and Donald MacDonald, the administrator, who is the plaintiff. Their testimony, which is substantially the same, is to the effect that before MacDonald started across the street with the load of brush he looked both ways, that he had an unobstructed view for three hundred and fifty or four hundred feet in the direction from which the defendant's car came, that at that time no car was visible, that he walked practically straight across the street, and that as he did so the defendant's car appeared travelling at the rate of forty or forty-five miles an hour. Walking with MacDonald or just in front of him was the young boy of the witness, McLean. Both witnesses testified that the automobile had but one headlight burning. When the car was first seen, Mr. MacDonald was, according to this evidence, about in the center of the road, and the car at that time was three hundred and fifty to four hundred feet away. What then happened is best described in the words of the plaintiff.

"Q. Did anything happen at that time, so far as a warning was concerned? Did anybody give any warning at that time?

A. Yes.

Q. Who?

A. Mr. McLean.

Q. What did he say or do?

A. He hollered, 'Look out for the car.'

Q. Mr. McLean, when your father was in the center of the street, hollered, 'Look out for the car,' and at that time it was three hundred and fifty to four hundred feet away from him: is that correct?

A. Yes.

Q. What did your father do then?

A. He quickened his pace, trying to get out of the way.

Q. What had he been doing, or what was he doing just before McLean hollered this warning to him?

A. Walking across the road.

*  *  *  *

Q. When he quickened his pace, after Mr. McLean shouted this warning to him, about how fast would you say he was going?

A. He didn't go very far.

Q. Did he start to run?

A. Yes.

Q. In other words, he was walking before the warning was shouted to him, and, when he heard the warning, he started to run: is that correct?

A. Yes.

Q. And he ran from the center portion of the highway over to a point three to four feet away from the ditch?

A. Yes.

Q. When he was hit?

A. Yes, about that."

Mr. McLean testified as follows:

"Q. Now, after you yelled this warning, 'Look out for the car,' did Mr. McDonald start to run?

A. No; I should say that he stopped for a second.

Q. Then what did he do?

A. He dashed across the street."

Both witnesses seem to agree that at the time he was hit Mr. MacDonald had nearly crossed the travelled part of the highway and was near the ditch on the farther side of it.

It appears that just prior to the accident a car with four young ladies in it passed in the opposite direction. Mr. MacDonald was at that time on the sidewalk preparing to cross, and one of the occupants of this car testified that they passed so close to him that the branches which he was carrying brushed against her. It is significant as showing the deceptive shadows which this brush must have thrown that she did not realize that a man was carrying it. Another of the passengers merely saw what she at first thought was a shadow, but on coming nearer discerned the pile of brush and a man's hat and shoes.

The defendant's version is that shortly after passing the car with the young ladies in it, while he was travelling toward Medway on his right-hand side of the road at a moderate rate of speed, he noticed the McLean child directly in front of his car and but a few feet away. He rose up to be able better to see the little child, put on his brake, veered about three feet to the left and cleared the child, but, as he did so, a clump of bushes with Mr. MacDonald's

face peering through them loomed up in front of his windshield on the left-hand side of his car. The left side of the windshield struck the man and he fell to the street. The defendant drove his car ahead and to the right-hand side of the road, went back and found Mac-Donald lying about in the center of the road.

The specific allegations of negligence are that the defendant was driving his car at an excessive rate of speed and that his lights were not properly lighted; and the only evidence tending to show defendant's negligence bears on these two charges. To substantiate them we have the testimony of the deceased's son and the neighbor McLean, who both saw the accident. They both agree that but one headlight on the car was burning. On this point they are contradicted by the defendant and by the occupants of the car which passed by before the accident. In any event the car was plainly visible to Donald MacDonald and McLean, when it was, according to their testimony, three hundred and fifty to four hundred feet away, and presumably could have been seen by the deceased. The testimony as to speed is conflicting. The two men who saw the approaching car agree that it was travelling more than forty miles an hour, the defendant's testimony is that he was going between ten and twenty. The determination of the issues as to defendant's negligence raised by this conflicting evidence was for the jury.

Under the provisions of R. S. 1916, Chap. 87, Sec. 48, the burden of proving the contributory negligence of the deceased was here on the defendant. That burden we believe has been sustained. It is obvious that the defendant knew nothing of the conduct of the deceased just prior to the accident, but we can not ignore the testimony of McLean and of the son. Theirs is the only evidence in the case which shows what this unfortunate man did as he proceeded to cross the street. Their testimony is not altogether satisfactory, but the two men are in complete agreement that the defendant's car was sighted by them when it was at least three hundred and fifty feet away, that McLean then warned the man. His son said that he immediately started to run, McLean said that he stopped for a second and then dashed across the street; and it is obvious that, continuing so to do, he came in contact with the defendant's car somewhere on its left-hand side without ever coming in the line of

the defendant's vision in front of the car. The son does not know which side of the car struck him. McLean says it was the left side, the defendant says it was the left, and the cracked glass in the left side of the windshield tells its own story. In view of the fact that he was picked up approximately in the center of the street, when all parties admit that the car was on its right side of the way, is a most convincing circumstance. The want of due care by the deceased would seem to be definitely established by the testimony of the plaintiff's own witnesses. We are not unmindful of the rule that the failure of one to utilize the best means of escape when confronted with a sudden emergency is not necessarily negligence, *Blair* v. *Lewiston, Augusta & Waterville Street Railway Co.*, 110 Me., 235; but, accepting the uncontradicted testimony of McLean and of the son that the automobile was sighted three hundred and fifty feet away, there was no sudden emergency presented which would excuse this man's then running across the street into the side of the car, unless we assume that the automobile was approaching at an almost incredible rate of speed and faster than the plaintiff's own witnesses contend that it was going.

The question of contributory negligence is ordinarily for the jury, *Shaw* v. *Bolton*, 122 Me., 232; but where as here on the uncontroverted testimony a want of due care by an injured person is clearly shown, it is the duty of the court to set aside a verdict in his favor. *Page* v. *Moulton*, 127 Me., 80.

The view which we have taken of the case makes it unnecessary for us to consider the exceptions.

*Motion sustained.*
*New trial granted.*