WALTER S. A. KIMBALL *vs.* HARRY W. BAUCKMAN.    No. 310.

WALTER S. A. KIMBALL *vs.* HARRY W. BAUCKMAN.    No. 325.

GENEVA W. KIMBALL *vs.* HARRY W. BAUCKMAN.    No. 326.

Cumberland.    Opinion January 26, 1932.

*Harry E. Nixon,*
*Jacob H. Berman,* for plaintiffs.
*Harry C. Wilbur,*
*Leon V. Walker,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.  THAXTER, J., DISSENTING.

STURGIS, J.   These three actions of negligence were tried together and, after verdicts for the plaintiff in each case, come to this court on general motions and exceptions.

In the forenoon of February 10, 1931, as the plaintiff, Walter S. A. Kimball, a physician living in Portland, Maine, accompanied by his wife, Geneva W. Kimball, drove his Ford town car towards Auburn along the state highway in the town of New Gloucester, he collided practically head-on with the Ford coupe which the defendant was driving in the opposite direction towards Portland. Referring to these cases by their numbers in this court, but out of order, Doctor Kimball in No. 325 alleges that this collision was due solely to the defendant's negligence and seeks to recover for his personal injuries and damages to his automobile. In No. 310 he sues for his expenditures and losses growing out of his wife's injuries, and in No. 326 the action is brought by Mrs. Kimball to recover compensation for her personal injuries.

MOTIONS:

The evidence tends to show that it was snowing hard when this collision occurred and the road was covered with several inches of snow. The plaintiffs were driving into the storm, but the defendant rode with it. Doctor Kimball's car had no tire chains. The defendant's car had chains. The road was practically straight where the cars met and was plowed out, but banked several feet high on the sides with snow. Both cars had windshield wipers and the glass in front of the drivers was clear, but in front of Mrs. Kimball the windshield was covered with snow and her view ahead was shut off.

For some miles before he reached the scene of the collision, Doctor Kimball had been following a large truck described as a van. After several unsuccessful attempts to pass the truck which held the center of the road, seeing the truck swinging to the right, he turned out to the left, speeded up his car and started to go by. He says the truck was then going about eighteen miles an hour and fixes his speed at "about twenty to twenty-three or twenty-five miles an hour." As he "got started in there a little ways . . . hadn't got hardly to the hind wheel," he saw the defendant coming straight towards him, as he says, one hundred twenty-five feet away. Asked as to his exact location in respect to the truck when he first saw the defendant's car, Doctor Kimball says, "The front end of my car must have been two-thirds up that car, up that truck." And to the question, "How far did you go forward on the roadway from the

time when you nosed out so that your front end got out from behind the truck up to the time when you say you were two-thirds of the way along the truck?", he replied, "I don't know, but I guess about twenty-five or thirty feet." The Doctor also said that the moment he saw the defendant coming he threw out his clutch and applied his brakes, advancing only twenty feet when he was struck. He admits his car was moving when the impact came and states that the truck had left him and "was going away from me when we hit." As to the defendant's slowing down before the collision, Doctor Kimball's statement is, "I couldn't tell you. I didn't notice. I was trying my best to think and get out of my own muddle. I couldn't tell you. He was fast when I saw him and then it was quickly over."

The defendant told the jury that as he approached the place where the cars collided, his windshield was cleared with a wiper and a sleet chaser, which melted the snow as it fell, and his vision was in no way obstructed. The road was straight and in the distance ahead he saw a large truck and at least two cars behind it coming towards him. He says that when the truck was at least three hundred feet from him, seeing the Kimball car come out from behind it, he slowed up his car, but the Kimball car dropped back and he resumed his speed of twenty-five miles an hour. When the distance had shortened to one hundred twenty feet, the Kimball car came out again from behind the truck and, seeing the two coming side by side towards him, he says he "instantly" threw out his clutch, applied his brakes and swerved to the right to the edge of the snow bank. His estimate of the speed of the on-coming Kimball car is thirty-five miles an hour. He does not know whether it slowed down or not except that, as he says, he was going five miles an hour when he struck and the Kimball car was traveling even faster.

Mrs. Kimball could not see through the snow-covered windshield in front of her. Her testimony neither adds to nor detracts from the essential assertions made by her husband. The driver of the truck did not see the collision. He says he was going about twenty-five miles an hour until just before it occurred and states that the defendant passed the front of his truck traveling very slowly. The driver of a car following Doctor Kimball estimates their speed just before the collision as twenty-five miles an hour but, with his view

ahead cut off by the truck, can give little accurate information as to the relative positions or operation of the cars which collided. Neither the location nor the condition of the automobiles after they came together shed clear light on what actually occurred.

## NEGLIGENCE:

The defendant undoubtedly had the technical right of way. But this did not relieve him from the exercise of reasonable care. The supreme rule of the road is the rule of mutual forbearance and, if a situation indicates a collision, although it arises from the fault of another, ordinary prudence requires the driver of a motor vehicle to seek to avoid a collision though this involve the waiver of his right of way. *Fitts* v. *Marquis*, 127 Me., 75; *Ritchie* v. *Perry*, 129 Me., 440; *Tomlinson* v. *Clement Brothers*, 130 Me., 189.

From the time the defendant saw Doctor Kimball come out from behind the truck in his final attempt to pass it, a head-on collision was inevitable unless the cars were stopped or the Kimball car slowed down and dropped back into its own lane. If, as the defendant says, the cars were forty yards apart when he first saw the Kimball car turn out, his estimate of its speed, when compared with that which he fixes as his own, permitted a conclusion by the triers of fact that an immediate effective application of the brakes of his Ford coupe, equipped as it was with chains, would have stopped it in a comparatively short distance and there would have been no collision. The defendant's own testimony warrants the inference that although, so far as he knew, Doctor Kimball, after he turned out, made no attempt to drop back or to bring his car to a stop, nevertheless for a time at least the defendant drove ahead without any substantial decrease in his own speed. His defense that he applied his brakes "instantly" is not borne out by the evidence. We are of opinion that, while the issue is not free from doubt, the jury, upon a consideration of all of the evidence, were not clearly wrong in finding that the defendant was negligent.

## CONTRIBUTORY NEGLIGENCE:

Doctor Kimball, when he turned out, was on the wrong side of the road where automobiles coming from the opposite direction had the right of way. His duty to anticipate the possibility, if not prob-

ability, of the presence of such approaching cars charged him with a degree of care commensurate with the increased risk incident to his turn into the left lane. Until a clear vision disclosed a stretch of unobstructed road which would permit a safe passage out by the truck ahead, it was not due care to swing to the left of the center line of traffic unless he had such control of his car as would permit a drop back into his own proper lane when the impossibility of a safe passing was apparent. If, as he says, he "hadn't got to the hind wheel" of the truck when he saw the defendant coming straight towards him and one hundred twenty-five feet away, no good reason appears for his failure to then slow down, allow the truck to leave him and himself drop back into line. But if, as he also says, he had overtaken and brought his car two-thirds up the truck when he first saw the defendant, his failure to observe the on-coming automobile earlier can only be attributed to thoughtless inattention, which is the very essence of negligence.

It is agreed that the automobiles were not less than one hundred twenty feet apart when the drivers saw each other and, viewing the evidence most favorably for the plaintiffs, they were traveling at approximately the same rate of speed. Computation indicates that Doctor Kimball's car even then went ahead not less than sixty feet and, in the light of his admission that his car was moving when the impact came, we can not doubt that he, as did the defendant, either failed to effectively release his clutch and apply his brakes or delayed so doing until the collision was inevitable.

We are of opinion, therefore, that Doctor Kimball was guilty of contributory negligence, which was concurrent with and not independent of that of the defendant and was operative until the last moment. On the record, the defendant had no last clear chance to avoid a collision. The emergency of his situation was created by his own negligence. Under the settled law of this state, his failure to establish his own due care defeats his recovery in his action for damages to his person and automobile.

As already noted, in action No. 310, Doctor Kimball seeks to recover in his own name, as husband of Geneva W. Kimball, for his loss of her consortium and the expenses he incurred as a result of her injuries. The action is case for negligence and governed, we think, by the settled rules generally applicable to that form of

action. If so, Doctor Kimball's failure to prove his own due care should bar his recovery in this suit. This seems to be the view of the few law writers who have discussed this question. Their conclusions, although not decisive, are instructive and accord with the principles underlying the law of negligence. The following are worthy of note.

The editor in his note to 8 L. R. A. (N. S.) 656 says: "Undoubtedly a husband ought not to be permitted to recover damages for the loss of his wife's services through personal injuries sustained by her to which his negligence contributed. None will dispute that." In *Penn. R. R. Co.* v. *Goodenough*, 55 N. J. L., 577, 590, Judge Dixon in a dissenting opinion observes that, against a husband's claim for damages sustained by the physical injury of his wife, such as the expense of her cure and the loss of her society, "no doubt his contributory negligence would be a defense." In *Kokesh* v. *Price*, 136 Minn., 304, a ruling in the trial court of like effect is approved.

We are of opinion that Doctor Kimball's negligence bars his recovery in this action. To hold otherwise would do violence to the law of negligence as interpreted in this state, allowing the plaintiff to recover for an injury to which his own negligence contributed as a proximate cause. This the law will not allow. The verdict in No. 310 can not be sustained.

The verdict for Geneva W. Kimball in action No. 326 must be sustained. The damages awarded are not excessive. The negligence of the defendant as found by the jury has already been discussed and confirmed. The plaintiff was merely a passenger in a car under the control and management of her husband. His contributory negligence is not imputable to her. *Mitchell* v. *The B. & A. Railroad Co.*, 123 Me., 176; *Cobb* v. *Power & Light Co.*, 117 Me., 455; *Denis* v. *Street Railway Co.*, 104 Me., 39. Nor is a finding that she herself exercised due care clearly wrong. The facts warrant the inference that Doctor Kimball turned quickly to the left side of the road and collided with the defendant's car in a matter of seconds. Mrs. Kimball was not bound as a matter of law to anticipate her husband's negligence. Sitting on the right-hand side of the car, even if the windshield in front of her had been free from snow, she could have no view of the road for any distance ahead, until she was out from behind the truck. It is not an unreasonable conclusion that

she then had no opportunity to avert the collision. The law will not charge her with lack of due care for a failure to do that which would have been futile. It is when dangers become either reasonably manifest or known to a passenger and he, with adequate opportunity to control or influence the situation for safety sits by without warning or protest to the driver and permits himself to be driven carelessly to his injury that his negligence will bar his recovery. He is not obliged to assume control of the car, and if warning or protest would not have averted the disaster, his silence is not the proximate cause of his injuries. *Peasley* v. *White*, 129 Me., 450; *Dansky* v. *Kotimaki*, 125 Me., 72, 76.

EXCEPTION:

At the close of the charge of the presiding Justice, in the action of Doctor Kimball to recover for his loss of the society and services of his wife and expenses incurred in her behalf, the defendant requested an instruction to the jury to the effect that a finding of negligence on the part of Doctor Kimball which contributed to his wife's injuries barred his recovery. The instruction should have been given. The law on this point had not been covered in the body of the charge. The refusal to instruct the jury upon it was error.

In No. 310—*Walter S. A. Kimball* v. *Harry W. Bauckman*,
> *Exception sustained.*
> *Motion granted.*
> *New trial ordered.*

In No. 325—*Walter S. A. Kimball* v. *Harry W. Bauckman*,
> *Motion granted.*
> *New trial ordered.*

In No. 326—*Geneva W. Kimball* v. *Harry W. Bauckman*,
> *Motion overruled.*

THAXTER, J.   I regret that I am unable to concur in the opinion of the Court in so far as it holds that there is evidence of the negligence of the defendant. I should hesitate to give expression to even a brief dissent, if I felt that the decision was in any way dependent on the interpretation to be given to conflicting testimony. But the facts are not in dispute.

They show that the defendant was traveling on his right-hand side of a narrow highway which by reason of snowdrifts on each side was just wide enough to permit the passage of two cars. The testimony of all the witnesses seems to agree that the driving conditions were bad and the road slippery so that it was impossible, as Mr. Laughlin, one of the witnesses said, to stop a car quickly.

Under such conditions of travel Dr. Kimball, the plaintiff, turned his car to his left-hand side of the highway to pass a truck when the defendant's car was approaching within a distance of one hundred and twenty-five feet. The only evidence as to speed is that each car was going twenty-five miles an hour.

The plaintiff has the burden of establishing the defendant's negligence. It must be conceded that the defendant's speed of twenty-five miles an hour was reasonable, that he was keeping a lookout, that he was on the proper side of the road and did all that he could to turn his car as far to the right as possible. The only evidence of his negligence, according to the opinion of the Court, is that he did not bring his car to a stop before the collision took place. And how much time did he have to do it? Accepting the distance between the cars as testified to by both drivers as one hundred twenty-five feet, when the peril was discovered, and conceding that they were going but twenty-five miles an hour, the defendant had just one and two-thirds seconds to determine that Dr. Kimball was going to insist on driving ahead, to apply his brakes, and to bring his car to a stop within a distance of sixty-two and one-half feet. As it was he almost stopped, the driver of the truck testifying that as the defendant passed him the wheels of his Ford were barely turning. He himself says that he was going not over five miles an hour at the time of the impact.

The defendant was not bound to anticipate that the driver of an approaching vehicle would be so foolhardy as to attempt to overtake and to pass the truck at the particular time and place that Dr. Kimball attempted to do so. "Due care would seem to require that one should not pass a traveler in front at a time when the passage will bring him into danger of collision with another vehicle." *Huddy: Automobiles*, 8th Ed., 459.

The decision of the issue as to the defendant's negligence depends not on whether it was possible for him to have stopped his car, but

rather on whether his not doing so under the particular circumstances is evidence of a want of due care. There is, moreover, no testimony to indicate within what distance he could have stopped. When we are dealing in fractions of seconds, it is difficult to predicate fault on the mere failure to achieve a certain result.

When we consider that the defendant was faced by a situation of sudden peril created not by himself but by the plaintiff, Dr. Kimball, which he had no reason to anticipate, that a large truck and an automobile occupying together the whole road were rushing toward him with no avenue of escape, that there was a space of time of less than two seconds for his mind to record the fact that the plaintiff had adopted and intended to persist in a reckless course of conduct, and thereafter for him to bring his car to a stop on a slippery way, I do not see how we can say that there is any evidence that he did not act the part of a reasonably prudent man. It seems to me that he did all that could have been expected of him and more than most men similarly situated would have accomplished.

It appears to me that the proximate cause of the accident was the negligence of Dr. Kimball, and that alone, and in my opinion the motion for a new trial should be sustained in each case.