BLANCHE DANIEL
*vs.*
ERNEST MORENCY

Androscoggin.   Opinion, September 9, 1960.

*Marshall & Raymond,* for plaintiff.

*Mahoney & Desmond,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ. DUBORD, J., did not sit.

SULLIVAN, J.   This is an action on the case instituted on October 30, A. D. 1958 by the plaintiff for her bodily injuries and other special damages arising from a public nuisance, *Restatement of The Law, Torts,* Chapter 40, Page 218, Introductory Note; R. S., c. 141, §§ 6, 18; *Smith* v. *Preston,* 104 Me. 156, 162.

Defendant was a garage proprietor.  In the public sidewalk in front of his place of business he maintained a gasoline pump.  To the south, in the sidewalk but in front of the adjacent premises defendant had a metal filler pipe which

covered the inlet pipe serving to fill the tank below defendant's gasoline pump. The pump and filler cap had been at their respective locations for several years. The sidewalk top surrounding the filler cap had been concrete but a week before March 30, A. D. 1958 the city had tarred the sidewalk. Prior to such resurfacing the filler cap had rested level with the bordering sidewalk but thereafter the filler cap was left sunken 1½ inches in an encircling orifice of bituminous coating. The sidewalk was 9½ feet wide and on a flat plane. From the center of the filler cap to the curb line of the sidewalk the distance was 2 feet. The gasoline pump 16 inches square and 5 feet in height stood 8 inches from the same curb and was located some 8 feet north of the filler cap.

The filler cap was of cast iron and 6 inches in diameter. It was horizontal and had 3 holes in its diameter line, each of which was ½ inch deep. The center hole was 1 1/16 inches square. The other 2 were elliptical with their smallest diameter 1¼ inches. The square hole accommodated a wrench or tool in removing the cap for the filling of the gasoline tank or for measurement by stick of the tank's contents. The other 2 holes afforded purchase for the fingers of one lifting off the filler cap.

Just before 11 A. M., March 30, A. D. 1958 was clear, sunny, dry and somewhat cold. There was neither snow nor ice. The plaintiff stood on the sidewalk 1 foot away from and inside the curb line and south of the filler cap. She was talking to a friend and was facing the building south of and adjacent to the defendant's garage. She turned and proceeded north along the sidewalk a few steps, caught her heel in the filler cap, stumbled, fell against the gasoline pump and landed prostrate upon the sidewalk. She was seriously injured.

The plaintiff alleges that the defendant had adopted the use of the filler cap which in its dangerous condition consti-

tuted a nuisance, that he did so negligently and that his negligence was the proximate cause of the injuries and damage to the plaintiff who had exercised due care withal. Plaintiff was awarded a jury verdict. Defendant here prosecutes several exceptions properly reserved.

One exception is to the refusal of the presiding justice to grant a motion of the defendant for a directed verdict in favor of the latter because of the contributory negligence of the plaintiff.

The plaintiff was the only witness to the incipient phase and efficient cause of her unfortunate fall. Her testimony is more authentic than any paraphrase could be.

> "I turn around, took a few steps, and then I was walking and my heel went into somethings to cause to turn my foot, and when I did I lost my balance. - - - -
>
> - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
> "Q.  Have high heels?
> "A.  Not too high, but high enough.
>
> "Q.  - - - did you know there was an opening in the sidewalk?  Gasoline fill pipe?
> "A.  No, I didn't know.
> - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
> "Q.  Did you look at the sidewalk to see where you were going?
> "A.  Yes.
>
> "Q.  What were you doing at that time?
> "A.  Just minding my own business on the way to church.
>
> "Q.  And do you know what happened to your shoe with relation to that opening?
> "A.  Well, as I stepped I just fell. I didn't have no change (chance?) or any — my heel there, — I fell.
>
> "Q.  And, specifically, where was your heel at that time, you say you fell?

"A.   Right in that filler pipe there.

"A.   - - - I just make a couple of steps, and into that hole I went, and then I lost my balance. - - -

"A.   I turned and I make a few steps, and then I feel my heel go in the hole, and then I turned my foot - - -

"Q.   Did you see the filler at that time?

"A.   I didn't see the hole, no, just see the sidewalk and start walking - - - of course, I look down. It was all black and I didn't. - - -

"A.   Yes, when I turned around I looked where I was going, or, started looking, and start walking.

"Q.   And you didn't see the filler cap, or did you?
"A.   No, I didn't.

"Q.   You didn't see the filler cap at all?
"A.   No.

"A.   Well, when I stepped in then I saw it, when I stepped in it I see it then.

"   Well, I stepped, I looked. But my heel down there, and, of course, I would see it.

"Q.   Which did you see first, the hole or the filler cap?
"A.   Well, I don't really know.

"Q.   Well, can you tell us what it looked like when you saw it?
"A.   Yes. I can see that round thing, and it was higher than the sidewalk was. Higher than that cap. When I step, I step right in that hole, and that was the cause of my fall.

"A.   Well, what I stepped in it, of course, I turned around after I fell. That is the way I saw that.

After I had my fall I look around, where is it I step into.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

"Q. And you told us while you were on the sidewalk, after your fall, that you saw this filler cap, is that right?

"A. When I get up, somebody help me to my foot, and I look around, and I saw what I have where I fell.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

"Q. Do you recall it was while you were somewhere in the vicinity of those pumps you looked over and saw the filler cap?

"A. Yes, when they take me up I turn around.

"Q. - - - do you know its color?

"A. - - - I think it was kind of a yellow color, if I remember right. I don't know.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

"Q. - - - when you first started to fall did you look down there again?

"A. Yes.

"Q. And did you see the top of this filler pipe at that time?

"A. Yes, I did.

"Q. So, you did see it then and again, did you look when you were getting up or being helped up from the sidewalk?

"A. Yes.

"Q. So you saw it on two occasions?

"A. I saw it twice, yes, sir.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

"Q. Well, now, you turned around

"A. Yes.

"Q. You were looking at the ground, as I understand you

"A. Yes.

"Q. Right there at the sidewalk.

"A. Yes, sir.

"Q. And how far were you from the filler cap?

"A. Well, I don't know. Just a few — I just take a few steps - - - to start.

"Q. But you didn't see it before you reached it, did you?

"A. No.

"Q. Pardon?

"A. I don't remember.

"Q. You didn't remember whether you saw it or not before you stepped in?

"A. I guess I did, yes.

"Q. You did see it before you reached it?

"A. Yes, I would say. I don't know. I'm not sure. I saw it just when I stepped in it. I don't remember that.

"A. Well, I know I saw it when I put my heel in it.

"Q. No, that is not my question. Did you see it, Mrs. Daniels, before you reached it, while you were looking at the sidewalk?

"A. I don't remember.

"Q. You don't remember?

"A. If I did see it or not."

The plaintiff was a mature woman of some fifty years in age and the mother of an oldest child of 34 years. The day was bright and clear. The sidewalk was wider than 9 feet and level. The indentation around the metal filler cap was at least 6 inches in diameter and 1½ inches in depth. The plaintiff was shod with somewhat high and narrow heels, attenuated enough to become trapped in small recesses. She did not notice the pitfall until she had stepped into it and her fall had become inevitable.

The cavity in the black top of the sidewalk and the submerged filler cap were visible and in the direct course of the

plaintiff. Nothing save the inattention of the plaintiff could have prevented her from noticing and evading the open closure which she never saw until her foot was settling into it beyond the possibility of retraction. Following her mishap the plaintiff found the crater and cap readily perceptible. Considering only the testimony most favorable to the plaintiff we must conclude that she was guilty of contributory negligence. *Bechard* v. *Railway Co.*, 122 Me. 236, 237; *Hultzen* v. *Witham*, 146 Me. 118, 122.

> "The question of contributory negligence is ordinarily for the jury. Shaw v. Butler, 122 Me., 232; but where as here on the uncontroverted testimony a want of due care by an injured person is clearly shown, it is the duty of the court to set aside a verdict in his favor. Page v. Moulton, 127 Me. 80."

*McDonald* v. *Pratt*, 129 Me. 434, 439.

> "Ordinary care requires that one give attention to where he is walking, even on a city sidewalk.

Witham v. Portland, 72 Me. 539; - - -

> "There is contributory negligence as a matter of law where that is the only inference that can reasonably be drawn from the facts shown. - - -"

*Olsen* v. *Portland Water District*, 150 Me. 139, 144, 145.

The plaintiff in this jurisdiction has the burden of establishing by a preponderance of the evidence that her conduct was duly careful and did not contribute to her adversity. *Kimball* v. *Bauckman*, 131 Me. 14, 19; *Barlow* v. *Lowery*, 143 Me. 214, 217.

There can be no doubt that the faulty condition of the sidewalk constituted a common and public nuisance in a much frequented area. R. S., c. 141, §§ 6, 18.

> "Public highways afford an equal right to each citizen to their reasonable use, and any unreason-

able obstruction that prevents or hinders such use, creates a nuisance in the judgment of the law."

*Smart* v. *Lumber Co.,* 130 Me. 37, 47.

Assuming without the necessity of deciding that the defendant was chargeable with the maintenance of that nuisance, contributory negligence of the plaintiff nonetheless precludes a recovery by her.

*Dickey* v. *Maine Telegraph Co.,* 43 Me. 492, 496; *Palleria* v. *Farrin Bros & Smith* (1958), 153 Me. 423, 437; *McFarlane* v. *City of Niagara Falls,* 247 N. Y. 340, 160 N. E. 391; *Beckwith* v. *Town of Stratford,* 129 Conn. 506, 29 A (2nd) 775; *Harper and James, The Law of Torts,* Volume 11, § 22.8, Page 1223.

Our decision makes it unnecessary for us to consider the other exceptions.

*Exception sustained.*