JACOB K. SUTPHEN, DEFENDANT IN ERROR, v. V. J. HEDDEN & SONS, PLAINTIFFS IN ERROR.

Argued December 2, 1901—Decided March 3, 1902.

1. Where the abutting owner or those under him find it necessary in the improvement of the abutting property to make excavations in or along a city street, it becomes their duty to exercise reasonable care to properly guard the excavation to prevent accident.

2. They may perform this duty by erecting guards or barriers, or by giving warning by lights or otherwise to protect the careful traveler from injury; the sufficiency of such guards or warnings under the circumstances of a given case being a question for the jury.

3. In the erection of a fence to guard such an excavation, the owner is required to make it sufficiently secure to withstand any wind that a reasonably prudent man ought to have anticipated in building such a fence. If it fall, causing injury, only because the wind was of such extraordinary violence or unusual character that a reasonably prudent man would not have anticipated it, the owner would not be liable.

4. The plaintiff was injured by the fall of a fence induced by a high wind and by his precipitation thereby into an excavation made along a city street for building purposes and obtained a verdict for damages. Exceptions were taken on the trial to refusals to nonsuit and to direct a verdict, and also to refusals to charge as requested. Held, on review, that there were no errors in the rulings.

On error to Essex Circuit.

For the plaintiffs in error, *George Holmes.*

For the defendant in error, *Chauncey G. Parker* and *George Biller.*

The opinion of the court was delivered by

HENDRICKSON, J.   The plaintiff below was injured, as he alleges, by the fall of a fence, induced by a high wind and by his precipitation thereby into an excavation.   The accident occurred on November 9th, 1900, while plaintiff was walking in a southerly direction along the Halsey street front of the lot being built upon at the northwest corner of Halsey and Bank streets in the city of Newark.   The excavation in question was being made for the foundations of a new building, and it invaded the street so that the fence in question stood three or four feet inside the line of the street.

There was evidence tending to prove the following facts: The defendants, who were contractors, had charge of the excavation, and preparatory to the work they had removed the flag pavement, substituting for it a plank walk erected about four inches above the curb, five feet in width, along the westerly edge of which they constructed a tight board fence six feet six inches in height.   The whole front covered by this construction was more than one hundred feet in length.   The fence was built in sections thirteen feet long, nailed to the frame structure which formed the foundation of the walk. They were braced at either end on the side toward the buildings upon timber which projected from under the plank walk. There were no posts set in the ground, because the excavation beneath made it unsafe to do so.   The sections were not fastened to each other except by strips nailed across the top. The day was windy and blustery, and at the time of the accident there was a sudden gust of wind, as to the exact character of which the witnesses differ, some describing it as a high, but not unusual wind at that time of the year, others describing it as very high and unusually violent.   The result

of the wind was to demolish three sections of the fence, which separated as they fell into the excavation; the balance of the fence remained standing. A few minutes later the plaintiff was found lying on a heap of sand over one of the piers in the excavation in a dazed condition. He was lying within five feet of the line of the fence, just opposite the opening in it. The nails had drawn which held the fence to the plank walk. The walk itself was not injured. The sections of the fence were found within the excavation from fifteen to eighteen feet from the line where the fence had stood. The plaintiff's injuries consisted of abrasions upon the right side of the head, upon the right hand and arm and a sprain of the right ankle. He recovered in a suit for damages. The defendants took exceptions to the rulings of the trial judge, upon refusals to nonsuit and to direct a verdict, and also upon a refusal to charge as requested, to which refusals exceptions were taken and sealed.

The declaration in the first two counts sets forth the gist of the action as negligence and unskillfulness in the erection of the fence, whereby it fell upon the plaintiff; and in the third count, which was allowed to be added at the close of the plaintiff's case, the action is grounded upon the failure of duty to maintain the fence in such a safe and secure condition as to properly guard persons using the highway from falling into the excavation.

Before dealing with the questions raised upon the motions to nonsuit and to direct a verdict, it may add to the clearness of the discussion to first review the question of law raised upon the refusal of the trial court to charge the seventh request of the defendants. The court was asked to charge as follows: "If the jury find that the defendant did owe a duty to the public with reference to the excavation, then such duty merely demanded that notice of the existing danger by reason of the excavation being there be given to the public. As the plaintiff knew of the existence of the excavation, the duty to the plaintiff had been performed." Upon the refusal to charge this request the defendants have assigned error, and, in support of their contention, cite the cases, among others,

of *Durant* v. *Palmer,* 5 *Dutcher* 544, and *Temperance Hall Association* v. *Giles,* 4 *Vroom* 260. They rely largely upon the passage in the opinion of Mr. Justice Depue in the latter case which reads as follows:

"An area opening into a public footway or so near thereto that a person lawfully using the way, with ordinary caution, might, by accident, fall into it, is, *per se,* a nuisance; and only ceases to be such, when proper means are adopted, either by enclosing it, or maintaining a light to warn persons of danger, to guard against the occurrence of such accidents."

I think it plain that the court does not, in this language, lay down the principle contended for that as a matter of law a warning or notice to pedestrians is all that is necessary in such a case. On the contrary, the meaning of this excerpt is that in order to be blameless, the owner must use proper means to guard against accidents. The learned justice points out two methods of so doing, one by enclosing the opening, the other by maintaining a light to warn, which may be resorted to for the purpose. That he did not mean to designate either method as sufficient as a matter of law is made clear by reference to the syllabus, which designates the methods that may be adopted to guard against accidents as "either by enclosure or otherwise." Doubtless in many instances a warning by a light or other signal at the point of danger would fill the requirement of duty, while in others, particularly where a concurring cause contributes to the accident, an enclosure or barrier would become necessary. And, of course, whether in a given case the one or the other method of guarding against danger would be a sufficient compliance with the required duty is a question for the jury.

The view I have expressed is, I think, sustained by subsequent cases in this state. In *Weller* v. *McCormick,* 23 *Vroom* 470, Mr. Justice Dixon, speaking for the Supreme Court, says: "The public right is paramount, and includes the right to have the street safe for travel. * * * The abutting owner may use the highway in front of his premises, when not restricted by positive enactment, for loading and unload-

ing goods, for vaults and chutes, for awnings, for shade trees, &c., but only on condition that he does not unreasonably interfere with the safety of the highway for public travel." See, also, *State* v. *Society, &c.,* 13 *Vroom* 504; *Houston* v. *Traphagen,* 18 *Id.* 23; *Daneck* v. *Pennsylvania Railroad Co.,* 30 *Id.* 415; *Fox* v. *Wharton,* 35 *Id.* 453.

The true rule deducible from the cases may be stated thus: Where the abutting owner or those under him find it necessary in the improvement of the abutting property to make excavations in or along a city street, it becomes their duty to exercise reasonable care to properly guard the excavation to prevent accident. They may do this by erecting guards or barriers or by giving warning by lights or otherwise to protect the careful traveler from injury; the sufficiency of such guards or warnings under the circumstances of a given case being a question for the jury.

But it will be observed that the defendants did not stop with giving notice or warning to the plaintiff, but erected the fence in question to guard the excavation and perhaps to serve a purpose of their own in preventing access to the premises. They were bound to exercise ordinary care and skill in the erection and maintaining of the fence, so that it should not itself become a menace to the public, and the plaintiff had the right to assume that it had been made reasonably safe. It follows that the plaintiff's knowledge of the existence of the excavation was now no longer a factor upon the question of defendants' liability. The request, in addition to having embodied in it an incorrect statement of the law, also ignored this important phase of the situation, and was therefore properly refused.

The motions to nonsuit and to direct a verdict were urged upon the ground, first that there was no evidence that the plaintiff was struck by the fence. The plaintiff testified that he was struck by something that rendered him unconscious, so that he could not say just how he came to fall into the excavation. There were other witnesses who testified that the fence was lifted by the wind before it went over into the

excavation. And considering that fact with the other circumstances, I think it reasonably probable that the plaintiff was struck by some part of the wrecked fence. The course of the wind was from the northwest, and the fact that the fence fell westwardly indicates that the wind may have had a whirling motion, which would be favorable to the plaintiff's theory of how he was struck. I think there was sufficient, therefore, under the first two counts, to go to the jury. But if this were not so, the third count having been added at the close of the plaintiff's case, the refusal to nonsuit was proper if there was evidence to go to the jury under that count. Upon the point that there was no evidence to show that the defendant had that possession of the excavation which made it their duty to guard it, I think the evidence on that subject was also quite sufficient to go to the jury.

Other grounds urged in support of this exception are that there is not sufficient evidence of want of care in the erection of the fence and that it is shown conclusively that the wind was of such extraordinary violence that a reasonably careful person would not be bound to anticipate it in building a fence. I think from the evidence herein briefly stated that both these questions became fairly debatable and were properly submitted to the jury by the court. To the instructions on these questions no exception was taken by the defendants.

Under the third request the trial judge was asked to charge "that unless the evidence satisfies the jury that the plaintiff was actually struck by the falling fence while he was on the public highway, the falling of the fence cannot be regarded as the proximate cause of the plaintiff's injury, and the verdict must be for the defendant." I think this request also was properly refused. Assuming as we must under this request that the falling of the fence was at least one of the efficient causes of the accident, it is none the less proximate in character because the wind was a concurring cause in producing that result. It is true that without this concurring force the accident could not have happened, but it is equally true that if the fence had not given way under the violence of the wind

the accident could not have occurred. Such a concurrence of causes does not necessarily render either a remote cause. They may both be proximate. 16 *Am. & Eng. Encycl L.* 440; 15 *Id.* (*2d ed.*) 460; *Thomp. Negl.* 1085.

Under the fifth request the judge was asked to charge "that if the jury believe that the fence would not have fallen except for the extraordinarily high gale blowing at the time the fence fell, then the falling of the fence is not to be regarded as negligence on the part of the defendant." This the judge refused to charge except as he had already charged. His charge on this subject was to the effect that if the fence was nailed with sufficient security to withstand any wind that a reasonably prudent man ought to have anticipated, and fell only because of a wind of such extraordinary violence or unusual character that a reasonably prudent man would not have anticipated it, then the defendants are entitled to a verdict in their favor.

The matter was here presented with legal accuracy. The request, on the other hand, was faulty in not designating the character of the wind, as to whether it was an ordinary or extraordinary wind, in the sense here defined in the charge. The request to charge as it stood was properly refused, except as the judge had already charged.

The sixth request asked the court to charge, "If the evidence satisfies the jury that the plaintiff was blown into the excavation by the force of the wind, and was thus injured, their verdict must be for the defendant." This request is also faulty in not designating the character of the wind in the legal sense as above defined; for, if the request refers to the effect of a wind that was ordinary in its legal sense, then the question of defendant's negligence involved in the falling of the fence must be considered by the jury before a verdict could be returned for the defendants. The judge had properly instructed the jury on the subject-matter of this request, and he rightly refused to charge as requested.

No error appearing in the rulings excepted to, the judgment should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, HENDRICKSON, ADAMS, VREDEN-BURGH. 8.

*For reversal*—COLLINS, GARRETSON, PITNEY, VOORHEES, VROOM. 5.