THE BANK OF BISHOP & COMPANY, LIMITED, A CORPORATION, *v.* THE HAWAII SOAP COMPANY, LIMITED, AND K. AKIRA.

No. 1547.

RESERVED QUESTION FROM CIRCUIT COURT FOURTH CIRCUIT. HON. H. L. ROSS, JUDGE.

ARGUED JANUARY 19, 1925.                    DECIDED JANUARY 28, 1925.

PETERS, C. J., PERRY AND LINDSAY, JJ.

APPEAL AND ERROR—*directed verdict—sufficiency of evidence.*

When evidence is adduced tending to support the necessary findings in favor of the defendant it is error to direct the jury to render a verdict for the plaintiff.

OPINION OF THE COURT BY PERRY, J.
(Peters, C. J., concurring.)

This is an action of assumpsit upon a note for $9000. The defendants are The Hawaii Soap Company, Limited, the maker, and K. Akira, an indorser. At the first trial, in obedience to the direction of the presiding judge, the

jury rendered a verdict in favor of the plaintiff and against both defendants for the full amount of the principal of the note and for interest. Upon exceptions this court sustained the verdict as against the maker, set aside the verdict as against the indorser and granted him a new trial. (27 Haw. 537) At the new trial of the case as between the plaintiff and the indorser alone, evidence was introduced by both sides. When both parties had rested, the plaintiff asked the court to direct the jury to render a verdict for the plaintiff. Thereafter the parties entered into a stipulation to the effect that the cause might be submitted to the supreme court on the following reserved question: "Should the request of the plaintiff in this cause for a directed verdict against the defendant K. Akira be granted?" and further to the effect that "in the event that the supreme court should answer the reserved question in the affirmative, then the plaintiff shall be entitled to recover judgment as prayed for" and "should the answer of the supreme court to said reserved question be in the negative, * * * the defendant K. Akira shall be entitled to have judgment entered in his favor in said cause;" also that the jury might be dismissed. The jury was thereupon dismissed and the trial judge reserved for the consideration of this court the question in the terms above quoted.

It is evident that the plaintiff was entitled to a directed verdict only if there was not evidence sufficient to support a verdict in favor of the defendant. If there was evidence, more than a mere scintilla, from which the jury could as reasonable men find a verdict in conformity with law favorable to the defendant, then a direction such as that requested would be out of place.

On or about June 10, 1921, the defendant, The Hawaii Soap Company, Limited, obtained from the plaintiff a loan of $9000 and gave to the plaintiff its promissory

note in that sum indorsed by the defendant Akira and a mortgage upon a leasehold interest in certain land. About a week later the soap company gave to the plaintiff an additional mortgage upon certain machinery and other personalty, to secure the repayment of the same loan. These facts were undisputed. Examining the transcript of the evidence we find that there was evidence tending to show that in applying to the plaintiff for the loan it was represented to it by the applicant that the latter had certain machinery at the dock which had not yet been delivered to it because it had not been paid for by the purchaser, The Hawaii Soap Company, Limited; that upon payment for the machinery and receipt and delivery thereof the soap company would be able and willing to give to the plaintiff a mortgage upon the machinery by way of further security for the loan; that both on the occasion of the making of the arrangements for the loan and the giving of the note and the first mortgage and on the occasion about a week later of the giving of the second mortgage Muraki, acting on behalf of the plaintiff in these negotiations, told Akira that the note, with its indorsements would be "temporary only" and that upon the soap company delivering to the bank a mortgage upon the machinery and other personalty the indorsers would be released from all further obligation in the matter. For example, Akira testified, "so temporarily Mr. Muraki said that he would accept note for this loan" (Tr. p. 14); "Muraki said that the personal note of $9000 was to be considered canceled" (Ib.); "we wanted money but the mortgage could not be executed because the machinery had not yet been delivered and that's the reason this note was made temporarily and to be afterwards taken place by this mortgage" (Tr. p. 15); "I asked Muraki at the time that if this mortgage and the personal note that was executed before that was to

be canceled and he said 'Yes' " (Tr. p. 18); referring to the note, "he said that is all pau, no more of that note" (Tr. p. 21); "Was it then that Muraki made any statements to you about the note that you had signed being done away with?" "That was said in the office" (Tr. p. 26); and "I asked Muraki that the—that since we are putting in this new mortgage that the old one was to be considered as canceled and he said 'Yes, that is so' " (Tr. p. 26). T. Ono, a witness, testified that Muraki said "that since the note that was given previously was for temporary note until the execution of this mortgage and that upon the execution of this mortgage the former note was to be canceled" (Tr. pp. 35, 36). Muraki testified: "In regard to the indorsers there was a new note to be taken in connection with the mortgage, only a temporary note." "That was a temporary note?" "Yes" (Tr. p. 39); "I told him" (Akira) "it was the understanding that the note would be canceled." "That was to be canceled upon the execution of the mortgage, is that correct?" "Yes sir" (Tr. p. 40); "when the mortgage was executed" (meaning the second mortgage) "Akira said to me 'if all the indorsers were to be released' and I told him 'Yes' " (Tr. p. 42); "Shaw" (acting manager) "told me to tell them that if the note was—if mortgage was executed the note would be canceled—that if the note was given if mortgage was subsequently given this note would be canceled" (Tr. p. 44). There was some evidence to the contrary but of the weight and the creditability of the evidence the jury was the sole judge. The case could not properly be withdrawn from the jury when, as here, there was substantial evidence from which it could find the fact of a release of the indorser.

So, also, there was evidence sufficient to support a finding by the jury that Muraki was authorized to represent the plaintiff in the negotiations in question. Akira

testified that "at that time" Muraki "was employed by the Bank of Bishop & Co." in Hilo and "was carrying on these negotiations on behalf of the Bank of Bishop & Co." with him, that he, the witness, "had known Muraki a long time prior to this" transaction, that Muraki "had been working down there in the bank" for that long period of time, that the witness had carried on "business relationship with Mr. Muraki prior to that time when he was acting on behalf of the Bank of Bishop & Co.," that the witness had "dealt with Bishop & Co." and "for a long time prior to the 10th of June, 1921, Muraki had been employed down there" to his knowledge (Tr. pp. 12, 13), and that in all his "dealings with the Bank of Bishop & Co. in regard to this Hawaii Soap Company" Akira's dealings were carried on with Muraki. (Tr. p. 17) Muraki testified that at the time of the transactions in question he was a "clerk" in the bank and when asked, "How did you come to tell Akira that the note given by the Hawaii Soap Company would be canceled?" answered, "Through Mr. Shaw, I interpreted what he said" and further testified that Mr. Shaw told him to tell the Hawaii Soap Company and Akira "that if a mortgage was subsequently given that this note would be canceled." A. S. L. Gurney testified that he was manager of the Hilo branch of the Bank of Bishop & Company, Limited. (Tr. p. 5) B. W. Shaw testified that at the time of the transaction in question Mr. Gurney was absent and that he (Shaw) "attended to the transaction" (Tr. p. 49); that "these matters were carried on with Akira and Ono * * * mostly in Japanese and that Muraki acted as interpreter" (Tr. p. 49) and when asked, "Isn't it a fact, Mr. Shaw, that Mr. Muraki was carrying on all the dealings of the Bank of Bishop & Company with the Japanese in June, 1921?" answered, "Not all of

them, some of them." "Those that could not speak English?" "Yes." "Mr. Akira doesn't speak very good English?" "He speaks some English." "He can speak a little pidgin-English?" "Yes."

The plaintiff did not introduce any evidence otherwise tending to show the extent or the limitations of the powers and duties of Muraki as a representative of the bank in the matter. Upon the testimony which was adduced it was competent for the jury to find that it was in accordance with the ordinary practice of the bank for Muraki to carry on negotiations of the general nature of those in question with Japanese customers who could not use English fluently and to arrange with them terms such as those which were testified to as having been agreed upon in this instance.

It is objected that the evidence of what Muraki and Akira said tends to contradict and modify a written instrument signed by the parties and is therefore inadmissible. In our opinion the evidence does not have that effect but on the contrary assumes that the note was given in the terms expressed upon its face. It simply tends to show an agreement to release the indorsers upon the subsequent happening of a stated event. As between the parties thereto such an agreement is clearly valid. In the case at bar there are no rights of innocent purchasers requiring consideration.

A direction to the jury to render a verdict for the plaintiff would not have been proper under the circumstances. The reserved question is answered in the negative and the cause is remanded to the trial court for such further proceedings, not inconsistent with this opinion, as may be proper.

*W. H. Smith* (also on the briefs) for plaintiff.

*F. Patterson* (also on the brief) for defendants.

I concur in the foregoing opinion. The procedure undertaken upon this reservation should not, however, pass unnoticed.

The case was tried before a jury. Upon the conclusion of all the evidence plaintiff moved for a directed verdict whereupon both parties stipulated to have the questions involved in the motion reserved to this court upon the single question of whether the motion for a directed verdict should be granted and accordingly as the question was answered in the affirmative or negative the plaintiff or defendant should have judgment below. The jury was dismissed. As the case stands there are no proceedings below to which the opinion of this court is referable. Had this court refused to answer the question reserved, as it has a right to do under the statute, and returned it to the circuit court for decision by it in the first instance, the circuit court would be powerless to proceed and a new trial would become necessary. Nor do I think that the legislature in enacting R. L. 1915, sections 2511-2512, as amended by L. 1919, c. 47, intended that jury trials be interrupted and questions arising therein be reserved to this court. Reservations under circumstances such as these are not in my opinion calculated to subserve the prompt and efficient administration of justice. This reservation, moreover, is subject to the additional objection of counsel taking the case in their own hands and by stipulation speculating on the decision of this court.