GIRO DORIO *vs.* GERBER'S, INC.

KATIE DORIO *vs.* SAME.

KATIE DORIO *vs.* MODERN STORE FIXTURE COMPANY.

GIRO DORIO *vs.* SAME.

APRIL 20, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ

FLYNN, C. J.   These four actions of trespass on the case for negligence were brought by a husband and wife respectively to recover damages resulting from personal injuries to the wife alleged to have been caused by her tripping and falling over a dangerous obstruction on the sidewalk in front of certain premises in the city of Providence.   Two of the actions were against Gerber's, Inc., lessee of the abutting building, which was in the course of alteration, and the other two were against Modern Store Fixture Company, a corporation which had contracted to make the alterations to said building.

The cases were consolidated for trial in the superior court and a jury returned a verdict for the defendant in each of the actions against Gerber's, Inc. and for the plaintiff in each of the cases against the contractor, Modern Store Fixture Company.   Thereafter plaintiff's motion for an additur or new trial in each case was denied and each plaintiff prosecuted a bill of exceptions thereto.   The defendant contractor also prosecuted a bill of exceptions to the denial of its motion for a directed verdict in each of the cases against it.   Since the plaintiffs have waived all their exceptions, only the two cases against the contractor are now before us on defendant's single exception to the denial of its motion for a directed verdict in each case.   Since the husband's case depends upon a finding of liability of the contractor for injuries to the wife, we shall treat her case as if it were the only one pending, although our conclusions will apply to both cases.

The plaintiff's case was presented to the jury on the third, fifth and sixth counts of her amended declaration. The third count substantially alleges "it was the duty of the defendant corporation not to place, cause, permit or allow to be placed, building material upon the sidewalk so that it would constitute a dangerous obstruction to members of the public or travelers lawfully on said sidewalk such as the plaintiff."   And it further alleges: "Yet notwithstanding its said duty the defendant, its agents and

servants did carelessly and negligently place and cause, permit and allow to be placed and to be and remain on said sidewalk certain wooden planks, building material and other pieces of lumber, with the result that the plaintiff tripped over the aforesaid building material and fell violently to the sidewalk."

The fifth count sets out the terms of an ordinance of the city of Providence, chapter 33, section 43, (1946) which in substance prohibits the placing of goods, wares and merchandise or other material on any sidewalk except while loading, shipping or removing the same from a building or enclosure, and then alleges that, notwithstanding its duty to comply with said ordinance, the "defendant corporation, its agents or servants did carelessly and negligently and wrongfully and unlawfully, without securing any permit from the said Department of Public Works thereof, place or put, or suffer to be deposited, placed or put a wooden plank, and/or other building materials across the sidewalk used by the public as aforedescribed."

The sixth count alleges substantially that certain lumber fell and caused plaintiff to be tripped and knocked down while she was walking on the sidewalk, and further avers that the cause of the accident was unknown to her but that the instrumentality was in the sole control and custody of the defendant, wherefore she avers that the case comes within the doctrine of *res ipsa loquitur*.

The question before us is whether there was any material evidence, viewed most favorably to plaintiff, which would support the allegation of specific negligence in any of the above counts. We have examined the transcript and in our judgment there is no evidence tending to show that plaintiff was tripped or knocked down by *falling* lumber and the evidence does not bring the case within the doctrine of *res ipsa loquitur* as alleged in the sixth count of her amended declaration.

Nor do we find any evidence that goods, merchandise, lumber, building or other material were piled upon a portion

of the sidewalk in violation of the ordinance as alleged, or that defendant was in any way obstructing the sidewalk without a permit from the proper authority of the city of Providence as set forth in the fifth count. On the contrary, the permit to obstruct the sidewalk for the whole front of the building and for a depth of six feet from the building line is in evidence and undenied.

Therefore if the ruling of the trial justice denying defendant's motion for a directed verdict is to stand, it must be on the ground that there was some evidence to support the specific allegation of duty and negligence as set forth in the third count of the declaration. That count, as previously stated, depends substantially on the allegation that the defendant negligently caused or permitted a dangerous obstruction to be and remain on the sidewalk so as to cause the plaintiff, while in the exercise of due care, to fall and be injured.

From our examination of the transcript we cannot find any evidence that would constitute actionable negligence against defendant in this respect. The admitted or uncontradicted testimony in the transcript shows the following among other facts. Westminster street is a public highway in the city of Providence running generally east and west. Mathewson street, another highway running north and south, intersects Westminster street. On October 4, 1948, at about 9:45 a.m., plaintiff was walking westerly from the corner of Mathewson street on the northerly sidewalk of Westminster street, intending to go to W. T. Grant Company's department store, which at that time was located on the northerly side of Westminster street about opposite the Albee Theater and some distance westerly from Mathewson street. To reach the entrance of Grant's store plaintiff would have to walk past the premises of Gerber's proposed new store, on which alterations were being made.

The defendant had contracted to make such alterations for Gerber's building and had obtained a permit from the

city of Providence to obstruct the sidewalk along the entire front of that building for a depth of six feet from the building line. Pursuant thereto a barricade was being constructed and was partially completed to close in the area covered by the permit. The easterly end of the barricade nearest Mathewson street was completely closed with solid panels ten feet high for about five feet from the building. One or two pieces of two-by-four lumber as a "shoe" or base had been affixed to the sidewalk parallel to the front of the building and five feet therefrom. Several ten-foot prefabricated panels had also been erected along the front of the barricade by attachment to said base for a distance of half to two thirds of the entire front. The sidewalk in that location was from ten to thirteen feet wide so that between the front of the barricade and the curb there still were some five to eight feet on which pedestrians could travel safely.

On the morning in question the weather was bright and clear. There were no crowds of people using the sidewalk and plaintiff met only one woman who was coming from the opposite direction. The plaintiff testified that she was looking straight ahead and was not distracted by anything or forced to change her course for any reason. She did not intend to go into Gerber's building but intended to go into Grant's. The door of the latter store was some distance beyond the most westerly portion of Gerber's.

She had noticed the easterly end and the part of the front of the barricade which had been completed, and she was walking about half way between the front of it and the curb. For some unexplained reason she turned to her right, at a point somewhere beyond the last completed panel which had been erected, to go into a "space" or a "little opening where these barricades were going up," and as she turned into the area within the barricade she tripped and fell. She had not seen anything on the sidewalk nor did she see or know the cause of her tripping. But after she had fallen, when defendant's workmen had come upon the

scene to help her, she noticed for the first time a piece of two-by-four lumber about a yard long.

Further description of the opening and the location of the lumber was not given by her either in direct or cross-examination. Whether it was a loose piece of lumber or was the exposed portion of the "shoe" which was attached to the sidewalk and to which the next panel would be affixed is not disclosed by her. She admitted, however, that no part of the lumber upon which she claims to have tripped extended outside of the permitted area of the barricade, and that such lumber and the place where she had fallen were entirely within the space marked by the barricade.

The plaintiff did not deny other evidence showing that a carpenter's horse was placed on the westerly or incompleted side of the barricade to warn traffic coming from the west and that such horse was between the place where she turned to her right and Grant's store. In effect the completed barricade on the east, the partially completed barricade on the front, the two-by-four affixed to the sidewalk along the incompleted part of the front, and the carpenter's horse on the west side indicated the limits of the permitted barricade and were plainly visible to anyone walking on the sidewalk at that time and place.

She further admitted that if she had continued to walk along the part of the sidewalk between the curb and the front of the barricade where she had been walking, there would have been no accident and she gave no reason for leaving that place of safety to turn right at the location where she fell. She testified she was not in a hurry and gave no excuse for momentary or other distraction that might possibly raise a question of fact as to whether or not she had been exercising due care.

In our opinion the most favorable view of this evidence does not support the allegation in the third count of her declaration to the effect that the defendant, its agents and servants, had created or permitted a dangerous obstruction

to be placed or remain on the sidewalk. There is no evidence that the method of building the barricade was not reasonable according to accepted standards or that defendant's servants were negligent in following out the plans. Nor is there evidence that any part of the alleged obstruction was concealed so as to be misleading and dangerous to plaintiff. Her testimony as to this whole issue is quite vague and requires considerable speculation.

But even if it is possible to consider that, although defendant had a permit, there was evidence to raise an issue of fact as to whether the sidewalk was negligently obstructed so as to create or maintain a dangerous condition for pedestrians, nevertheless the only reasonable conclusion to be gathered from all the evidence most favorably considered to the plaintiff is that she was not in the exercise of due care.

We are aware that ordinarily such issue is for the jury to determine. But in the admitted circumstances, with plaintiff having notice and knowledge of a ten-foot barricade under construction and partially completed, with its limits plainly visible, and with a safe place for her to continue along the sidewalk without having an accident, she nevertheless without reason turned into a space that brought her within the area being closed off. If as she testified she was looking ahead so as to be in the exercise of ordinary care, she was bound to see the barrier being constructed including the panels and the base along the front and the carpenter's horse at the westerly side of the area being blockaded.

No reason or excuse whatever appears in evidence to justify plaintiff in leaving a place of safety to enter an area which, if dangerous as alleged, was within the part of the sidewalk being blocked off under a proper permit and which must have been obvious in broad daylight to any prudent person in the exercise of ordinary care. In our judgment there is only one reasonable conclusion from the evidence, namely, that she was not exercising the care

of an ordinary prudent person in the circumstances, even if we assume that her vague testimony had established the alleged duty and breach as to defendant's negligence. We are of the opinion that the trial justice erred in denying defendant's motion for a directed verdict in each case.

In the two cases brought against Gerber's, Inc., all the exceptions of plaintiffs being waived, each case is remitted to the superior court for entry of judgment on the verdict.

In each case brought against Modern Store Fixture Company, the defendant's exception to the denial of its motion for a directed verdict is sustained. On April 29, 1953 the plaintiffs may appear before this court to show cause, if any they have, why each of those cases should not be remitted to the superior court with direction to enter judgment for the defendant.

ON ORDER TO SHOW CAUSE.

JUNE 19, 1953.

PER CURIAM. In the above-entitled cases, pursuant to our opinion heretofore filed, the plaintiffs through their attorney appeared to show cause why the cases should not be remitted to the superior court for entry of judgment for the defendant as therein directed. At that time reasons were presented in support of their contention that the verdicts for plaintiffs should be sustained.

Upon consideration we are of the opinion that on the pleadings and evidence in this record no sufficient cause has been shown to change our conclusions. Each case, therefore, is remitted to the superior court for entry of judgment for the defendant as directed in the opinion.

*John Quattrocchi, Jr.*, for plaintiffs.

*Francis V. Reynolds, Joseph V. Cavanagh*, for defendants.