MARY RUTH YOUNG *v.* LOUIS P. PRICE AND ALLEN L. SOUZA, INDIVIDUALLY AND DOING BUSINESS AS PRICE CONCRETE TANK COMPANY, AN HAWAIIAN COPARTNERSHIP.

No. 4250.

DECEMBER 9, 1963.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY WIRTZ, J.

This is an appeal from the judgment entered on the verdict awarding plaintiff damages for injuries sustained

by her in a fall under the following circumstances.

At about 1:00 or 1:30 P.M. on the cloudy and windy afternoon of March 4, 1958, plaintiff, a 56-year old woman in "pretty good" health, noticed that it had started to rain as she was about to leave her apartment in Waikiki at the corner of Kuhio Avenue and Lewers Road. She reentered the apartment for her umbrella. She then walked down the sidewalk on the southerly (makai) side of Kuhio Avenue, in a Diamond Head, or easterly, direction toward Royal Hawaiian Avenue. She was carrying a Quantas airplane bag over her right shoulder containing $15 in silver and pennies, $15 in currency, some cookies, a thermos bottle of milk, a small jar of vegetables and a sandwich. Cradled in her left arm was her business ledger book.[1] In her right hand she tilted her umbrella so as to keep the rain from her trifocal glasses, which were wet.

When plaintiff was about half-way down the block, walking along the normal cement colored sidewalk, wearing flat-heeled, rubber-soled shoes, her right toe "hit something" which she had not seen whereupon she fell down on the sidewalk. Plaintiff thereafter looked down and saw that she was lying on a green hose of the defendants, or sitting on it, which was slanted across the sidewalk.[2]

Under this factual situation the immediate question posed concerns itself with liability as presented under the first specification of error that: "The trial court com-

---

[1] Plaintiff was self-employed as a "quick sketch" artist at the International Market in Waikiki. At the time in question she was on her way to pay her rent (based in part on gross receipts) prior to going to work at her place of business.

[2] Defendants had connected the one-inch hose (¾ inches inside diameter) to a fire hydrant located at mid-block on the grass plot between the mauka, or northerly, edge of the sidewalk and the curb of Kuhio Avenue. The hose slanted across the sidewalk and ran along in the grass plot in a Diamond Head, or easterly direction, between the makai, or southerly, edge of the sidewalk and the property line, to service a construction job of the defendants around the next corner on Royal Hawaiian Avenue.

mitted reversible error by failing to grant defendants' motion for a directed verdict, made at the close of plaintiff's case and repeated at the close of the evidence."

Bearing in mind that plaintiff having prevailed before the jury, her evidence must be considered in a light most favorable to her. Further, we are not unmindful that we must place ourselves in the same position as the trial judge who in ruling on a motion for a directed verdict "must look upon the evidence in the light most favorable to the movee with every reasonable inference which may be drawn from the evidence resolved in his favor." *Waterhouse Trust Co.* v. *Rawlins,* 33 Haw. 876, 884. See also, 5 Moore, Federal Practice, § 50.02 (2d ed. 1951); 2B Barron & Holtzoff, Federal Practice & Procedure, § 1075 (1961). At the close of plaintiff's case, this evidence consisted of her testimony and defendants' pre-trial admission that their hose was across the sidewalk.

Her testimony was that she was walking along a normal cement colored public sidewalk during daylight business hours of a rainy day. She was carrying her opened umbrella, which she held at an angle so that she could look straight ahead, and she was looking straight ahead so that she would not bump into people. She did not have her "nose to the ground."[3] She had walked about half-way down the block when her right toe hit something and she fell down and was injured. After the fall and while lying on the ground, she saw that she was lying or sitting on defendants' green water hose. She had not previously seen the hose, and saw no warning sign or sign of any kind at or near the place where she fell and did

---

[3] Although, at one point on direct examination, she stated, "I couldn't see that day—that particular day, because my umbrella was tilted," on cross-examination she denied making such a statement and repeated that she was holding her umbrella at an angle, and twice emphatically insisted that she was looking straight ahead.

not see "anything, or any person" on her side of the street.[4]

In summation, then, plaintiff's evidence on liability was that she fell down and found the defendants' hose beneath her; that she had been looking straight ahead as she walked down the block; that she had not seen the green hose or any warning; and that she had not seen anything or any person on her side of the street.

The only undisputed evidence relating to liability[5] supplied by the defendants was in the testimony of Moody M. Keliihoomalu, an Hawaiian Electric Co., Ltd. foreman, who was following behind the plaintiff as she walked down the sidewalk. This witness testified that the hose was lying flat on the sidewalk and that at each edge of the sidewalk where the hose crossed there was an orange traffic cone with a black base and a red tip.[6] He further testified that one of the cones had a red flag[7] sticking out of the top of it.

At the close of all the evidence, factually before the trial court was the following evidence pertaining to the negligence of the defendants: plaintiff fell on defendants' one-inch green hose, which was lying flat on the sidewalk, the sidewalk at that point being bracketed at each edge by a traffic cone, in one of which a red flag protruded.

---

[4] Plaintiff did admit that if there was any warning or sign off the sidewalk "it was behind my umbrella, and I didn't see it."

[5] This was the only evidence in the entire case as to the existence of warnings or warning signs. This evidence was not necessarily in conflict or inconsistent with plaintiff's testimony, she having only testified that she did not see anything, not that there were no warnings there.

[6] The cone introduced in evidence stood 18½ inches high on an 11-inch square base. The base and the lower 4 inches of the columns of the cone were colored black; the next 12 inches of the column was colored yellow; while the remaining 2½ inches of the column embracing the tip was colored red.

[7] The red flag in evidence measured 18 inches by 17¼ inches and was fastened to a 31½ inch stick.

To warrant submission of the issue of liability to the jury, there must be some substantial evidence, amounting to more than a mere scientilla, showing negligence. *Holstein* v. *Benedict*, 22 Haw. 441; *Bishop & Co.* v. *The Hawaii Soap Co.*, 28 Haw. 180; *Waterhouse Trust Co.* v. *Rawlins, supra*, 33 Haw. 876.

Further, "where the facts are disputed and reasonable men might differ on the facts or the inferences which may be reasonably drawn from the facts, the question of negligence is left to the jury under proper instructions; but where there is no conflict from the evidence and but one inference can be drawn from the facts, it is the duty of the court to pass upon the question of negligence and proximate cause as questions of law." *Carreira* v. *Territory*, 40 Haw. 513, 517. This is equally true where contributory negligence is the issue. *Ferrage* v. *Honolulu Rapid Transit*, 24 Haw. 87, 91.

The adoption of H.R.C.P., Rule 50, governing motions for a directed verdict has not affected these rulings, as the cases construing the corresponding Federal Rules of Civil Procedure are neither in conflict, nor inconsistent, with the above decisions. Generally, the federal courts have stated the rule to be that on motions for a directed verdict, the evidence and the inferences which may be fairly drawn from the evidence must be considered in the light most favorable to the party against whom the motion is directed and if the evidence and the inferences viewed in that manner are of such character that reasonable persons in the exercise of fair and impartial judgment may reach different conclusions upon the crucial issue, then the motion should be denied and the issue should be submitted to the jury. See, 5 Moore, Federal Practice, § 50.02 (2d ed. 1951); 2B Barron & Holtzoff, Federal Practice & Procedure, § 1075 (1961).

"Actionable negligence" has been defined[8] in *Ward* v. *Inter-Island Steam Nav. Co.*, 22 Haw. 66, 69, as "the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person would not have done." As pointed out in *Carreira* v. *Territory, supra*, 40 Haw. 513, 518-519, in order to establish liability for negligence "* * * it is incumbent upon the plaintiff to show three things: First, a breach of duty which defendant owed to him; second, a negligent breach of that duty; and, third, injuries received thereby resulting proximately from that breach of duty."

It becomes necessary to determine the duty which is owed to a pedestrian by one who creates an artificial condition upon a sidewalk. As a general rule, it is the duty of one who, in the lawful use of a sidewalk, creates a dangerous condition thereon or therein, to use reasonable care to warn pedestrians of its existence or to protect them against injury. *McManus* v. *New Jersey Water Co.*, 22 N.J. Super. 253, 91 A.2d 868; *Hansen* v. *Clyde*, 89 Utah 31, 56 P.2d 1366; and see cases in Annots., 104 A.L.R. 943 and 7 A.L.R. 1203. At least one case, brought to our attention, seems to hold that the placing of any obstruction on a sidewalk is negligence per se. *Atlanta Muffler Shop, Inc.* v. *McSwain*, 98 Ga. 722, 106 S.E.2d 823. We believe the holding to be too rigid. However, there is no question

---

8 The Restatement of Torts, § 282, defines negligence as "* * * conduct * * * which falls below the standard established by law for the protection of others against unreasonable risk of harm." This standard of due care is stated to be that "which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do." *Blyth* v. *Birmingham Waterworks Co.*, 11 Ex. 781, 784, 156 Eng. Rep. 1047, 1049. The Restatement of Torts (1948 Supp.), § 283, gives the standard as the conduct of a reasonable man: "* * * the standard of conduct to which [one] must conform to avoid being negligent is that of a reasonable man under like circumstances." Also see Prosser, Torts, § 31 (2d ed. 1955).

that the presence of a hose on a sidewalk creates some risk or hazard to a pedestrian.

The distinguishing factor in these sidewalk, or highway, obstruction cases as to the extent of the duty owed a pedestrian is the type or nature of the "dangerous condition" created. In the instant case it may well be arguable whether a hose lying across a sidewalk during the daytime could be considered a "dangerous condition," and because of a possible doubt in that respect, it conceivably could become a jury question. *Cf.*, 29 Tenn. L. Rev. 592 (1962). The catalytic ingredient to render this condition "dangerous" could be the existence in the particular locality of extrinsic circumstances affecting visibility, such as weather conditions or the time of day or night, provided such was, or should have been known or foreseen by the defendant.[9] *Cf., East Coast Freight Lines, Inc.* v. *Mayor & City Council of Baltimore*, 190 Md. 256, 58 A.2d 290; *Howard* v. *Knudson*, 229 Mo. App. 267, 77 S.W.2d 158.

Having created some risk to pedestrians, the defendants here were under a legal duty to exercise ordinary care in taking such precautions as might reasonably be necessary under the attendant circumstances to prevent injuries to pedestrians using the sidewalk in a lawful and proper manner. *Sutphen* v. *Hedden*, 67 N.J.L. 324, 51 Atl. 721; *Walton* v. *Noel Co.*, 167 Kan. 274, 205 P.2d 928. Whether in light of the extrinsic circumstances the precautions taken to prevent injuries to pedestrians using the sidewalk in a lawful and proper manner can be held, as a matter of law, to have relieved the defendants from liability is an exceptionally close question. However, even

---

[9] The only evidence here of such extrinsic circumstances was her testimony that it was a "very cloudy day" and that as she started out her door "it began to rain quite hard—the day it rained seventeen inches in twenty-four hours." There is no evidence that defendant knew or could or should have known of or foreseen such adverse weather conditions apart from the possibility of the same being a matter of common knowledge.

if it be assumed that there was sufficient evidence to go to the jury on the question of negligence, the plaintiff would not prevail, since we think that the question of liability finds a complete answer in the disposition of the second ground of the motions for a directed verdict made by the defendants.

Turning to a consideration of this second ground, namely, the contributory negligence of plaintiff in avoidance of liability, we note that, at the appellate level, the defendants have elected to press this ground on the basis of the motion made at the close of all the evidence. The defendants contend in their opening brief that "in failing to see the green hose, the two cones, or the flag, plaintiff was contributorily negligent as a matter of law."

The same standard of care required by the defendants to negate negligence is applicable to plaintiff's conduct to determine the question of contributory negligence. A plaintiff is required to exercise that amount of care which would be exercised by a person of ordinary prudence in the same circumstances. Contributory negligence is the neglect of the duty imposed upon all men to observe ordinary care for their own safety. It is the doing of something that a reasonable person of ordinary prudence would not do under the circumstances; or conversely, the failure to do something that a reasonable person of ordinary prudence would do.

Everyone is generally bound to exercise reasonable vigilance to discover perils which may prove to be a menace to personal safety. While persons walking on a sidewalk have a right to assume that it is reasonably safe for ordinary travel and are not obliged to keep their eyes continuously on the way, yet pedestrians must be observant of how and where they are going, so as to avoid dangers which ordinary prudence would disclose. They must use their senses, and cannot close their eyes to

obvious and manifest defects and dangers and proceed blindly and heedlessly into them and recover for injuries due to open and readily apparent defects or obstructions which their observation, prudently exercised, ought to have detected and avoided. Barring exculpable circumstances, such as justified distraction, or momentary forgetfulness, one who fails to see and avoid an obvious obstruction in or on a sidewalk just ahead in plain sight is guilty of contributory negligence as a matter of law.[10]. *Sloan* v.

[10] The authorities relied on by plaintiff shed but little light on the question before the court. The general texts cited represent the opinion of the text-writer and while stating recognized principles of tort law for the most part such are meaningless until and unless tailored to a factual situation. Of the cases cited by plaintiff only one, *Deane* v. *Johnston*, 104 So. 2d 3 (Fla. 1958), involving injuries sustained by a pedestrian in falling over the defendant's weighing machine located on a sidewalk, presents the factual problem of an obvious obstruction. This case, however, recognizes an exception to the rule, not here present, namely, that when a person falls over a known object, contributory negligence is a jury question if plaintiff's attention is diverted by circumstances which would distract or divert the attention of a reasonably prudent person. In *Chisolm* v. *Seaboard Air Line Ry.*, 121 S.C. 394, 114 S.E. 500, where the pedestrian was hit by defendant's train, the court applied the same exception. And the same was true in *Northern Pac. R.R.* v. *Everett*, 152 U.S. 107 (switchman injured in coupling railroad cars) and *Gentzkow* v. *Portland Ry.*, 54 Or. 114, 102 Pac. 614 (plaintiff shocked from defendant's trolley service wires). *Northern Pac. R.R.* v. *Everett*, *supra*, also absolves from contributory negligence a person who may be so situated, or incapacitated, without fault on his part as to be unable to look or listen for or to comprehend the perils by which he may be menaced.

In *Christopher Co.* v. *Russell*, 63 Fla. 191, 58 So. 45, involving a similar factual situation where the fall was caused by a hole in defendant's store floor, the court applied the doctrine, inapplicable here, that one is not contributorily negligent for not looking out for danger when there is no reason to apprehend it. This doctrine was also applied in *Foreman* v. *Western Union Tel. Co.*, 228 Ky. 300, 14 S.W.2d 1079 (plaintiff struck by bicycle) and *Patten* v. *Bartlett*, 111 Me. 409, 89 Atl. 375 (plaintiff's horse fell into cesspool).

The third case presenting a similar factual picture is *Mollencop* v. *City of Salem*, 139 Or. 137, 8 P.2d 783, where plaintiff-invitee fell while stepping over a sagging wire at city's airport, merely held that the issue of contributory negligence could not be raised for the first time on appeal.

The two remaining cases, *Stevens* v. *United Gas & Elec. Co.*, 73 N.H. 159, 60 Atl. 848 (workman fell on live electric wire) and *Great Northern Ry.* v. *Thompson* (9th Cir.), 199 Fed. 395, merely state the accepted principle that where reasonable minds might differ as to the reasonableness of plaintiff's conduct, the question is for the jury.

*American Press,* 327 Mo. 470, 37 S.W.2d 884, followed in *Fain* v. *Margo Equip. Co.,* 366 S.W.2d 14 (Mo. Ct. App. 1963); *Daniel* v. *Morency,* 156 Me. 355, 165 A.2d 64; *Hedrick* v. *Akers,* 244 N.C. 274, 93 S.E.2d 160; *Cooney* v. *Panama City,* 165 F. Supp. 381 (N.D. Fla. 1958). *Cf., Subasky* v. *The Great Atl. & Pac. Tea Co.,* 161 Pa. Super. 90, 53 A.2d 840; *Early* v. *Morrison Cafeteria Co.,* 61 So. 2d 477 (Fla. 1952); *Wall* v. *Derringer, Inc.,* 119 Vt. 36, 117 A.2d 390; *Hixenbaugh* v. *McCrory,* 145 Pa. Super. 586, 20 A.2d 910; *Price* v. *Taylor & Co., Inc.,* 302 Ky. 736, 196 S.W.2d 312. And see, *Dorio* v. *Gerber's Inc.,* 80 R.I. 267, 96 A.2d 332; *Burk* v. *Artesian Water Co.,* 47 Del. 405, 91 A.2d 545; Restatement, Torts, § 474[11] (1934.)

The court in *Sloan* v. *American Press, supra,* at 484, 37 S.W.2d at 890, concluded its discussion on the standard of care that a pedestrian must use by stating:

"Without going further, it is evident that all the cases * * * require a pedestrian to have some concern for his own safety in walking on a public sidewalk though he may be innocent of knowledge that there are defects or obstructions along the way. He does

[11] The Restatement of Torts states the rules as follows:

"§ 474. *Failure To Ascertain Condition of Highway.*

"If the defendant wrongfully deals with a highway so as to make it dangerous for public travel, a traveler injured thereby is barred from recovery by his failure to exercise reasonable vigilance to ascertain the condition of the highway.

"Comment: * * * * * *

"b. *Normal care required of traveler.* The rule stated in this Section applies not only when the defendant's wrong consists in his unauthorized interference with the highway but also when his interference is authorized, but he fails to exercise reasonable care to provide the guards or lights which are necessary to make the highway safe for travel. * * * the plaintiff must not only exercise reasonable care to avoid dangers which are obvious or of which he has knowledge, but he must be alert to discover the actual condition of the roadway. * * * Therefore, if the plaintiff would have observed the dangerous condition in time to avoid it, had he been paying that attention, which, in view of the normal risks of travel, a traveler should have paid, his contributory negligence in failing to exercise such reasonable vigilance is a bar to his recovery."

(NOTE: From the index it is clear that the term "highway" includes "sidewalk.")

not have to be constantly on the alert for defects not plainly observable, but neither may he go along paying no attention to where he is walking so that he would *fail to see* and *avoid obvious obstructions.* He must proceed as a reasonably prudent footman would do, with his eyes open and having regard for his general course." (Emphasis added.)

The court there found the plaintiff guilty of contributory negligence as a matter of law in not observing "an *obvious obstruction* just ahead in *plain sight.*"[12] (Emphasis added.)

In the present case, plaintiff testified that she looked straight ahead—down the sidewalk where she was walking, and directly towards the hose, two cones and flag, all of which were about half a block away from her as she started down and constantly in her line of vision as she approached them.

This is not a case of a hidden defect, or a trap, or involving items blending in with the background. In other words, this is not the situation where the defect or obstruction was not obvious or there was a failure on the part of the party responsible for the defect or obstruction to mark or in some manner warn pedestrians of the danger.[13]

---

[12] Some cases have distinguished the *Sloan* case, *supra*, on the basis of the size of the defect or obstruction. *Cf.*, *Sykes* v. *City of Los Angeles*, 110 Cal. App. 2d 57, 241 P.2d 1004; *Cline* v. *City of St. Joseph*, 245 S.W.2d 695 (Mo. Ct. App. 1952). In doing so it is clear that the concern was not so much over the size but rather how size affected the obviousness of the defect or obstruction.

[13] In such situations the courts have ruled that the issue of contributory negligence should be submitted to the jury: *Peters* v. *City and County of San Francisco*, 41 Cal.2d 419, 260 P.2d 55; *Sykes* v. *City of Los Angeles, supra*, 110 Cal. App. 2d 57, 241 P.2d 1004; *Martin* v. *Kansas City*, 340 S.W.2d 645 (Mo. 1960) ; *Denbow* v. *Chesapeake & Potomac Tel. Co.*, 199 Md. 609, 87 A.2d 584; *Robertson* v. *Liggett Drug Co.*, 81 Ga. App. 850, 60 S.E.2d 268; *Ripper* v. *City of Canton*, 166 Kan. 185, 199 P.2d 815; *Stoffel* v. *City of Cincinnati*, 87 Ohio App. 235, 93 N.E.2d 303; *Seitter* v. *City of St. Joseph*, 358 S.W.2d 263 (Mo. Ct. App. 1962) ; *Cline* v. *City of St. Joseph*, 245 S.W.2d 695 (Mo. Ct. App. 1952) ; *Grayson* v. *City of Atlanta*, 101 Ga. App. 575, 114 S.E.2d 459; *Blake* v. *City of Concord*, 233 N.C. 480, 64 S.E.2d 408; *Marzelle* v. *Ski-Land Mfg. Co.*, 227 N.C. 674, 44 S.E.2d 80.

Here, the hose, the cones and the flag were all of colors vividly in contrast with the "normal-colored cement" sidewalk, and they were all constantly in plaintiff's line of vision and well ahead of her as she proceeded down the sidewalk "looking straight ahead." They were there; she was looking straight ahead; she did not see them. "It is inescapable that the accident happened because plaintiff did not look where [she] was going." *Dukek* v. *Farwell,* 248 Minn. 374, 80 N.W.2d 53. Moreover, according to her testimony, plaintiff failed to see anything at all on the sidewalk.

*Daniel* v. *Morency, supra,* 156 Me. 355, 165 A.2d 64, presents a situation strikingly similar to the instant case. There, plaintiff fell on a public sidewalk during daylight hours, when her shoe heel caught in defendant's gasoline filler cap, which was painted yellow and was sunk one and one-half inches below the level of the sidewalk. Plaintiff prevailed before the jury, but on appeal the judgment was reversed, the court holding that even assuming that defendant maintained a nuisance, plaintiff was contributorily negligent, as a matter of law, in failing to see the obvious depression. The court, at 358, 165 A.2d at 66, quoted from plaintiff's testimony as follows:

"Q. Did you see the filler at that time?

\*　　\*　　\*　　\*　　\*　　\*

"A. I didn't see the hole, no, just see the sidewalk and start walking \* \* \*.

\*　　\*　　\*　　\*　　\*　　\*

"Q. You didn't see the filler cap at all?
"A. No.

\*　　\*　　\*　　\*　　\*　　\*

"A. Well, when I stepped in then I saw it, when I stepped in it I see it then."

In reaching its decision the court had this to say:

"The cavity in the black top of the sidewalk and the submerged filler cap were visible and in the direct course of the plaintiff. Nothing save the inattention of the plaintiff could have prevented her from noticing and evading the open closure which she never saw until her foot was settling into it beyond the possibility of retraction. Following her mishap the plaintiff found the crater and cap readily perceptible. Considering only the testimony most favorable to the plaintiff we must conclude that she was guilty of contributory negligence."

Like the plaintiff in the *Daniel* case, plaintiff here found the hose "readily perceptible"[14] after her mishap.

Inclement weather conditions, rather than excuse, call for increased vigilance. *Cf., Atkins* v. *Bouchet,* 65 Cal. App. 94, 223 Pac. 87; *Dimuria* v. *Seattle Transfer Co.,* 50 Wash. 633, 97 Pac. 657; *Ogden* v. *Lee,* 61 Cal. App. 493, 215 Pac. 122; *Ingle* v. *Maloney,* 234 Ill. App. 151. In *Hedrick* v. *Akers, supra,* 244 N.C. 274, 93 S.E.2d 160, defendant had placed a drain pipe in a sidewalk, which pipe was exposed two to five inches above the sidewalk. The pipe was rusty and blended somewhat with the color of the dirty sidewalk. At about 5:00 P.M. on a misty day, plaintiff tripped over the pipe. Plaintiff was nonsuited, and on appeal the judgment was affirmed as plaintiff was held to be contributorily negligent as a matter of law. The

---

[14] Plantiff's testimony in this connection was as follows: "The first thing I said was, 'my glasses,' and I looked down, and I had been sitting —lying on this hose, which was a little green hose about an inch in diameter, just like a regular water hose, and * * *."

Again, "* * * and I said, 'I'm sitting on a green hose. So that must have been what I fell on, because I never trip and fall. * * *"

Also, "Q. (Mr. Corey) In other words, the first time that you saw that there was a hose across the pavement was after you had fallen . . .

"A. Been picked up.

"Q. . . . and been picked up, and then looked, and there it was?

"A. That's right, and I had my glasses on."

court stated: "The mixture of dirt and rain on the sidewalk created an extra hazard which called for a corresponding increase in vigilance," and also observed that: "* * * the law is not able to protect one who has eyes and will not see." (244 N.C. 276, 93 S.E.2d 162.) See, *Sumner* v. *Griswold,* 338 Ill. App. 190, 196, 86 N.E.2d 844, 847, wherein the court stated:

"The law does not countenance the anomaly of professing to look and not seeing that which is clearly visible. * * *

"The fact that the night was misty and foggy in low places, as plaintiffs assert, would not condone the failure to see, but on the contrary, would necessitate greater caution * * *."

Here, plaintiff was burdened with a ledger book in her left arm, an airplane bag on her right shoulder, and her opened umbrella. (*Cf., Fain* v. *Margo Equip. Co., supra,* 366 S.W.2d 14 (Mo. Ct. App. 1963), where plaintiff was carrying an umbrella and a uniform besides her purse.) She was wearing trifocals, wet from the rain, but she was both familiar with and prepared for rain. At no time did she complain of impaired vision because of her trifocals or because of the moisture on them. The situation called for increased vigilance on her part, and she so expressed it: "* * * I'm looking ahead that I don't bump into a person * * *." Plaintiff was holding her umbrella at an angle to shield herself from the wind and the rain, but could see and was looking straight ahead on the sidewalk, "straight ahead * * * for a person." Presumably, plaintiff was thus saying that she was watching out for people and not for things. But a person cannot be elective in what he or she chooses to see and chooses not to see. *Cf., Gall* v. *The Great Atl. & Pac. Tea Co.,* 202 Va. 835, 120 S.E.2d 378.

By failing to see—ahead of her on the sidewalk and

in her direct line of vision—that which was obviously plainly in view, namely, the hose, cones and flag, ahead of her and in her direct line of sight, plaintiff failed to exercise ordinary care for her own safety, and was guilty of contributory negligence as a matter of law. In failing to direct a verdict for the defendants at the close of all the evidence, the trial court committed reversible error.

In view of the conclusion reached, it becomes unnecessary to consider the remaining specifications of error.

The trial court having denied a timely motion for judgment notwithstanding the verdict under Rule 50(b), H.R.C.P., the judgment entered by the trial court is reversed and the cause remanded for entry of judgment for the defendants.

*Daral G. Conklin* (*Smith, Wild, Beebe & Cades* with him on the briefs) for defendants-appellants.

*Ralph E. Corey* (*Clark & Corey* on the brief) for plaintiff-appellee.

I cannot concur with the court's opinion that the plaintiff was guilty of contributory negligence as a matter of law. It assumes that there was an obvious obstruction on a sidewalk just ahead in plain sight.

There was a definite conflict in the evidence. Plaintiff testified that she had not seen the hose, saw no warning sign, or sign of any kind, at or near the place where she fell. However, she did see the hose after she fell on the sidewalk. She had walked down this public sidewalk daily for 4½ years prior to the day of the accident. On this particular day, she slung a shoulder bag over her right shoulder containing a thermos bottle and her lunch. On her left arm she held her cash book or bookkeeping ledger, and "a little paper bag with fifteen dollars worth of silver

324

in it and fifteen dollars worth of bills." She wore trifocals, and "the wind was blowing on my glasses and getting them wet." There was testimony that it was raining, though not hard at the time. She carried an open umbrella in her right hand and "tilted the umbrella as protection against the wind." She said that "by habit I always watch in front of me that I don't bump into people and I don't go with my nose to the ground." She further stated that as she was walking along "if there was anything on the side of me, I didn't see it." She recalled a "green moss grass" strip and a fire hydrant between the street-curb line and the sidewalk and a green lawn to the right of the sidewalk. She had walked to just about the next house to her house, half-way down the block on the sidewalk when "my toe hit something and all of a sudden I'm just like that and down."

The testimony of the defendants' sole witness, Keli-ihoomalu, as to the position of the green hose, the position and color of the warning cones, and the position of the red warning flag was inconsistent, contradictory and ambiguous.

A person walking on a sidewalk has no duty to examine the street for defects or obstructions. He may act "* * * on the presumption the street is reasonably safe so long as he conducts himself as a reasonably prudent person would in like circumstances, * * *." *Heberling* v. *City of Warrensburg,* 204 Mo. 604, 617, 103 S.W. 36, 40. "* * * Of course, one cannot close his eyes and walk blindly and heedlessly into a place of danger. On the other hand, he is not bound to be on the lookout for hidden dangers. All that is required of him is that he walk with his eyes open, observing his general course, and in the usual manner." *Earl* v. *City of Cedar Rapids,* 126 Iowa 361, 365, 102 N.W. 140, 141.

I have no quarrel with the rule that a pedestrian on

the sidewalk does not have to be "constantly on the alert for defects not plainly observable but neither may he go along paying no attention to where he is walking so that he would fail to see and avoid obvious obstructions. * * *" *Sloan* v. *American Press,* 327 Mo. 470, 484, 37 S.W.2d 884, 890.

The question which confronted the Missouri court in *Sloan* v. *American Press, supra* at 482, 37 S.W.2d at 888-89, was "what degree of vigilance, if any, a pedestrian must exercise in watching for obvious defects or obstructions when walking along a sidewalk with which he is unfamiliar." It quoted from a separate concurring opinion in an earlier Missouri case, *Ryan* v. *Kansas City,* 232 Mo. 471, 134 S.W. 566, " 'While a footman may presume a city has done its duty in keeping its sidewalks in a reasonably safe condition for travel by pedestrians, by night as well as by day, yet that presumption runs with a condition. It goes hand in hand with another vital proposition, viz., that a footman must use ordinary, that is, due care to avoid injuring himself. Such care is the care of an ordinary person under like circumstances. Such care is broad enough to create the duty to look and see where one is going as well as the duty to avoid danger when actually discovered. That does not mean a pedestrian is an *inspector* of sidewalks or cannot take a step without looking down to see that his feet do not carry him into a pit, * * *. He need not be watching at every footfall for defects, but he should act like [sic] a prudent person, who makes reasonable use of his eyes while walking. He cannot shut his eyes, or blindfold himself, or walk backward, or not look about him at all, or, under the assumption that no defects exist walk heedlessly into obvious ones.' " *Sloan* v. *American Press, supra* at 483, 37 S.W.2d at 889.

In reversing the judgment for plaintiff the court stated that "* * * The appellant was proceeding along the side-

walk in broad daylight. The elevator opening, or at least the barriers 3½ feet high, were plain to be seen. He was not frightened or acting in an emergency. He could have glanced forward from time to time observing his course, but he did not. He could have seen the obstruction a long way ahead. His excuse for not doing so is that he lit a cigarette, and thereafter kept his eyes on a man on the other side of the street he thought was Ralph Ray. * * *" *Sloan* v. *American Press, supra* at 487, 37 S.W.2d at 891.

Other cases cited in the court's opinion are distinguishable or inapplicable to the facts in this case. *Daniel* v. *Morency,* 156 Me. 355, 361, 165 A.2d 64, 67, is in a jurisdiction where the plaintiff has "the burden of establishing by a preponderance of the evidence that her conduct was duly careful and did not contribute to her adversity." In *Sumner* v. *Griswold,* 338 Ill. App. 190, 86 N.E.2d 844, plaintiff's automobile ran into the rear of a wagon and team of horses. The standard of due care required of a plaintiff driving an automobile at night on a public highway is certainly different from that of a pedestrian on a public sidewalk during daylight hours. So, also, the standard of due care of a plaintiff crossing a street is a different matter, and *Atkins* v. *Bouchet,* 65 Cal. App. 94, 223 Pac. 78; *Dimuria* v. *Seattle Transfer Co.,* 50 Wash. 633, 97 Pac. 657; *Ogden* v. *Lee,* 61 Cal. App. 493, 215 Pac. 122, and *Ingle* v. *Maloney,* 234 Ill. App. 151, are distinguishable on that ground.

In *Hedrick* v. *Akers,* 244 N.C. 274, 276, 93 S.E.2d 160, 162, plaintiff testified as follows: " 'It was dirty around there and I didn't know whether there was dirt on the sidewalk, or whether it was concrete, or dirt washed up, or what. * * * I thought the pipe stuck up above the concrete some places as much as five inches and gradually tapered off to less than five inches * * * the pipe which was sticking up above the concrete was about eight or 10

feet in length.'" In view of this testimony, the court concluded that the plaintiff "did not see what she should have seen." Plaintiff's testimony in this case is not comparable.

Contributory negligence is a defense that must be proved by a preponderance of the evidence. The question of contributory negligence is for the jury when it arises upon a state of facts where reasonable men might draw different conclusions. Inasmuch as it was windy and raining at the time of the accident, and there was a conflict between the testimony of the plaintiff and the defendants' witness as to the presence and position of the warning cones and the red flag, I am unable to arrive at the conclusion that as a matter of law, the plaintiff should have seen the green hose on the sidewalk. It was for the jury to determine:

1. The position and course of the green hose from the fire hydrant, along the green grass strip between the hydrant and sidewalk, across the sidewalk, and along the green grass lawn adjacent to the other side of the sidewalk;

2. The position of the warning cones and warning flag, if any;

3. Whether the plaintiff, as a reasonably prudent pedestrian on a public sidewalk, in the exercise of ordinary care under inclement weather conditions could and should have seen a green hose as it lay across the sidewalk in an area where there was a green grass strip between the street-curb line and the sidewalk and a green grass lawn adjacent to the other side of the sidewalk;

4. Whether the plaintiff as a reasonably prudent pedestrian on a public sidewalk in the exercise of ordinary care under inclement weather conditions could and should have seen the warning signs, if any, and

thereby have her attention directed to the green hose as it lay across the sidewalk.

The trial court did not err in submitting the question of contributory negligence to the jury.

Likewise, the trial court did not err in submitting the question of defendants' negligence to the jury. It could not be said as a matter of law that the precautions taken by defendants were sufficient to relieve them of liability, particularly as the weather was inclement. *Cf., East Coast Freight Lines* v. *Mayor and City Council of Baltimore,* 190 Md. 256, 278-79, 58 A.2d 290, 300-01; *Sitas* v. *City of San Angelo,* 177 S.W.2d 85 (Tex. Civ. App.); *Walton* v. *Noel Co.,* 167 Kan. 274, 205 P.2d 928; *Sutphen* v. *Hedden,* 67 N.J.L. 324, 51 Atl. 721.

While I cannot concur in the entry of judgment for defendants as in my opinion the court did not err in denying the motion for directed verdict, I would reverse and remand for a new trial because of other error.